WARNER *vs.* THE NEW YORK CENTRAL RAILROAD COMPANY.

After evidence has been already given, in an action against a railroad company to recover damages for an injury arising from a collision between the defendant's cars and the plaintiff's wagon, at a street crossing, tending to show that on the occasion of the collision the flagman stationed there was intoxicated, and was absent from his post of duty, it is proper for the plaintiff to show that the flagman had, for some weeks before the occurrence, been indulging in habits of intemperance, so as to unfit him for the duties of his station; as bearing to some extent on the question of the defendant's carelessness.

When a railroad company has adopted the precaution of keeping a flagman at a particular crossing, as a mode of giving notice of the approach of trains, and has continued the custom for several years, the absence or presence of the flagman at his post, is a circumstance which the public has a right to notice and to take into the calculation of the measure of safety in crossing the railroad track at a given time.

Under such circumstances, the public have the right to suppose that no train is due or approaching, if the flagman is absent from his post.

If the place where a railroad track crosses a highway is a place of danger, so much so that the corporation has voluntarily undertaken the duty of keeping a watchman there, and has continued it, through a series of years, until the public has become accustomed to regard his presence, or absence, as one of the evidences of the approach of trains, or otherwise, it is a part of their duty to keep a fit person, whose conduct will not be liable to mislead and deceive the traveling public.

A railroad corporation, by acquiring the right to construct its road across a highway, and obtaining title to the land for its road bed, does not destroy or impair the public easement. The perfect and unqualified right of every citizen to pass over the road at that point remains the same as before.

It is not a question of superior, or subordinate right, in passing, which arises in an action for damages occasioned by a collision between a locomotive on the railroad and a vehicle upon the highway, but a question merely of the exercise of suitable caution and prudence, by either party in the exercise of a common and equal right.

In such an action it is proper for the court to hold, that the railroad company is bound to exercise a proper degree of care and prudence towards the traveling public.

APPEAL from an order made at a special term, denying a motion for a new trial on a case made by the defendant. The complaint alleged the incorporation of the defendant. That its railroad runs in a southwesterly direction from the city of Rochester, passing through the town of Gates. That there is a highway running westerly from the city of Roch-

ester, which is crossed by the railroad a short distance from the west line of the city, upon a level with the railroad. That the defendant had been in the habit of keeping a flagman at this station to warn persons crossing of the approach of trains. That for some time previous to the alleged injury, such flagman had been frequently intoxicated and unfit for his duties, to the knowledge of the defendant, and at the time of the alleged injury, was absent from his post. That on the night of the 23d of November, 1863, the plaintiff was traveling eastward in a buggy, along said highway, and when upon this crossing the defendant carelessly and negligently ran its locomotive and train of cars, going in a northeasterly direction, without giving any signal, upon the horse and buggy of the plaintiff, and thereby fractured the plaintiff's hip and ruptured his abdomen, and injured his horse and buggy, by reason of which he sustained damages to the amount of $20,000. The answer denied the complaint, and alleged that said injuries were caused by the want of care of the plaintiff, and without the fault of the defendant. The case was tried at the Monroe circuit, before the Hon. E. DARWIN SMITH, in January, 1865, and a verdict was found for the plaintiff for $5000.

In addition to the general verdict, the jury found, upon the specific questions submitted to them,

1. That the injury resulted from the collision with the train by the negligent act of the defendant.

2. That it resulted from the fright of the plaintiff's horse by the negligent act of the defendant.

3. That it resulted from both of these causes combined.

*A. P. Laning,* for the appellant.

*J. H. Martindale,* for the respondent

*By the Court,* JOHNSON, J.    There was no request by the defendant's counsel to have the plaintiff nonsuited, or to have

the jury directed to find a verdict for the defendant upon the evidence. On the contrary it was treated as a proper case for the jury, by the counsel on both sides, and the verdict must be deemed conclusive upon the questions of fact in issue, and which were submitted to, and passed upon, by the jury. That it was a proper case to be submitted to the jury upon the whole evidence, and in view of all the facts and circumstances disclosed thereby, does not admit of a doubt. The order of the special term, refusing a new trial, must therefore be affirmed, unless there was some error in the rulings in the course of the trial, or some error in the charge to the jury, or in refusing to charge as requested. Only one error in relation to the ruling in the admission of evidence is claimed by the defendant's counsel to have been committed. It is claimed that the court erred in admitting evidence of the habits of the defendant's flagman employed at the crossing where the injury in question happened, for sobriety, for several weeks previous to the occurrence. The ruling, it seems to me, was clearly right. Evidence had already been given tending to show that on the occasion of the collision in question, this flagman was intoxicated, and was absent from his post of duty, and that this was one reason the plaintiff had for supposing that no train could then be due or near due. The defendant had adopted the precaution of keeping a flagman at that crossing years before, and had continued it up to the time in question. This mode of giving notice of the approach of trains had been continued so long and had become so much a custom, on the part of the defendant, that the plaintiff and all the traveling public who understood it had a right to regard it, and take it into the calculation of the measure of safety, in crossing at a given time. It is not necessary in order to vindicate the correctness of this ruling, to hold that the absence or presence of the flagman would be a controlling fact. It is only necessary to say that it is one fact or circumstance which a party might properly notice, and take into the account, when wishing to cross. This being so, it was clearly

proper to show that the flagman had for some weeks before the occurrence been indulging in habits of intemperance, so as to unfit him for the duties of his important situation, as bearing to some extent on the question of the defendant's carelessness, which was one of the material questions in issue. In regard to the charge to the jury, it will be seen, in respect to most of the alleged errors insisted upon in the points of the defendant's counsel, that they are altogether unfounded in point of fact. In many of the instances, if not all, the Judge, on his attention being called to the matter by the defendant's counsel, charged precisely as requested by him. This of course cured any error the Judge may have previously committed in charging to the contrary, if he had done so. No exception will lie to a charge in such a case on any point thus modified or corrected.

Two or three points of difference between the requests of the defendant's counsel and the charge should, however, be noticed. The court was requested to charge that the rights of a citizen to the highway, at a railroad crossing, are subservient to the rights of the corporation. The Judge refused so to charge, and to this refusal there was an exception. In point of law the Judge was clearly right. The corporation, by acquiring the right to construct its road, and acquiring title to the land for its road bed, for that purpose, does not destroy or impair the public easement. The perfect and unqualified right of every citizen to pass over the road at that point remains the same as before. It is not a question of superior, or subordinate right, in passing, which arises in a case of this kind, but a question merely of the exercise of suitable caution, and prudence, by either party in the exercise of a common and equal right. This proposition of the defendant's counsel seems to pervade all the requests to charge, and all the exceptions to the charge as made, on the subject of the care and prudence required of the defendant in crossing highways, the court holding that the corporation was bound to exercise a proper degree of care and prudence toward the trav-

eling public, and the defendant's counsel insisting that they were legally exempt from all care in that regard. It is sufficient to say, upon this head, that the court was altogether right in this respect, and the position of the defendant's counsel altogether wrong, and wholly untenable.

The court also charged that the corporation was under no legal obligation to keep a flagman at a road crossing; but further instructed the jury, that if it had been for a long time accustomed to keep a flagman there, and the public were accustomed to see him there, they would have the right to suppose that no trains were coming when he was not out. This latter portion was excepted to. Taking this in connection with what had been charged previously, it was entirely proper. The whole question of the plaintiff's negligence had been fully submitted and the jury had been expressly instructed, that if the injury resulted from his own negligence, in any respect, he could not recover. There can be no doubt that the proposition was true, that when the defendant had for a series of years kept a flagman at a particular point, for the purpose of giving notice of the approach of trains, and the public had been accustomed to see him there uniformly, giving warning by signals, or otherwise, whenever trains were due and approaching, they might naturally suppose, and indeed would have the right to suppose, that no train was due or approaching, if the flagman was absent from his post. Indeed it appears by the evidence that the plaintiff, on the occasion, remarked upon the absence of the flagman as evidence that no train was then due. If this was a place of danger, so much so that the defendant had voluntarily undertaken the duty of keeping a watchman there, and continued it through a series of years till the public had become accustomed to regard his presence, or absence, as one of the evidences of the approach of trains, or otherwise, it was undoubtedly a part of such duty to keep a fit person, whose conduct would not be liable to mislead and deceive the traveling public. An unfaithful, incompetent, or intemperate

agent, would obviously be far more dangerous to the traveling public than none at all. Instead of a guiding beacon, it would be holding up a false light, to allure into danger. On the whole, I am of the opinion that there was no error, either in the charge, or in the refusal to charge as requested, in any particular. The case exhibits somewhat more than the usual amount of skillful skirmishing by astute counsel for some advantage after the charge to the jury was made; but I do not see that any signal advantage was gained to the prejudice of the merits of the controversy, which the jury determined.

The order refusing a new trial should therefore be affirmed.

[Monroe General Term, March 5, 1866. *Welles, E. Darwin Smith* and *Johnson,* Justices.]