ST. LOUIS, VANDALIA AND TERRE HAUTE R. R. Co.

*v.*

MARGARET DUNN, Admx.

1. NEGLIGENCE *in railroad—omission to give signal, and running at too high a rate of speed in a city.* A person was crossing a street in a city, after night-fall, in which there were four railroad tracks, upon which trains were passing at short intervals at all hours of the day, and just as he was stepping upon the farthest track in the direction he was going, he was struck by an approaching train, and injured to such an extent that he soon afterward died. The company employed a watchman, whose duty it was to warn persons crossing the tracks of danger from approaching trains, and, in view of the character of the thoroughfare, such a precaution was proper and necessary. But, at the time of the accident, the watchman was not present attending to his duty, and the train was running at a much higher rate of speed than was allowed by an ordinance of the city, and it was a question whether a bell was rung or a whistle sounded upon the engine: *Held,* under the circumstances, an omission of any one of the duties mentioned would constitute gross negligence on the part of the company.

2. CONTRIBUTORY NEGLIGENCE. Upon a review of the facts in this case, it is *held,* there was no such contributory negligence on the part of the person injured as would relieve the company of liability. If he saw the head-light upon the locomotive, in the darkness, and in the absence of any signal or warning, either from the watchman or from the bell or whistle, he would probably be unable to discover that it was in motion, or if he saw the engine approaching, he had the right to suppose it was not moving at a rate of speed greater than was proper at that time and place, and to regulate his own conduct accordingly. The omission of proper precautions by the company would, under the circumstances, tend to relieve the party from the charge of negligence on his part.

APPEAL from the Circuit Court of St. Clair county; the Hon. WILLIAM H. SNYDER, Judge, presiding.

Mr. WM. H. UNDERWOOD, and Mr. JOHN B. BOWMAN, for the appellant.

Mr. A. J. P. GARISHEE, Mr. WM. G. KASE, and Mr. WM. H. BENNETT, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

Appellee brought an action on the case, in the St. Clair circuit court, against appellant, to recover damages for negligently causing the death of her husband. It appears that appellee and her husband, with their two children, on the 10th day of March, 1872, left their home, in East St. Louis, about noon, to visit an aunt of appellee residing in St. Louis, Mo., and they spent the afternoon there. At about 5½ o'clock in the afternoon, they started on their return home, appellee carrying her younger child, and her husband the older. At the Mississippi river they were detained some time for the ferry-boat to cross over. On landing on the east side, they started and reached the street car line, but missed the cars. They then started to walk from there to their home, and, whilst crossing Christy avenue, the husband, some distance in advance of appellee, where there were four railroad tracks in the street, passed the watchman's house, used by him whilst on duty, and, as deceased stepped on the most easterly of the four tracks, a passenger train came around on the curve, from the round house, and struck and ran over him, cutting off his legs and otherwise injuring him, from which he died at about 9 o'clock that evening. The leg or foot of the child which he was carrying, was cut off, and, after lingering a couple of weeks, it also died.

On the last trial before the court and a jury, a verdict was found for plaintiff, and, after overruling a motion for a new trial, the court pronounced judgment on the verdict, and defendant prosecutes this appeal.

This was the last of five trials in the court below, all of which, but one, resulted in favor of plaintiff, and in that the jury were unable to agree.

Appellee claims that the company was guilty of negligence that renders it liable for damages. But the company insists that deceased was guilty of such negligence on his part as should preclude a recovery.

It is insisted that appellant did not ring a bell or sound a whistle; that the train was running at a greater rate of speed than was permitted by the ordinance of the city; that there was no watchman on duty to warn deceased of danger at the crossing of the street where he was killed. On all of these questions there was a conflict of the evidence, such as could only be correctly determined by seeing and hearing the witnesses testify. The jury had that opportunity and advantage, and have found all or some of these issues in favor of appellee. That the flagman was not at his post, and in the performance of his duty, we think the evidence preponderates, and warranted the finding on that question.

If, then, a bell was not rung, a whistle not sounded, or the train was running at an unauthorized rate of speed, or the flagman was not on duty, and failed to give the deceased proper warning, the omission to perform either of these acts would be negligence in the company. At such a time, and in such a place, it would be gross negligence to omit the performance of either of these duties, and if the jury found that either was omitted, then the judgment should be sustained. The company was operating a dangerous machine in a populous city, and on a thoroughfare at an hour of the day when the engineer and other officers of the company must have known it would be thronged with people. Being acquainted with the place, and, no doubt, aware of the fact that persons thronged the place in passing over its track, it should have been on its guard, and have scrupulously observed every duty imposed upon it, for the safety of the people. It was so public, and so much used, that a watch or flagman's house had been erected, and such an officer appointed to warn persons of danger. We may, therefore, infer that it was a place of very great danger, or this precaution would not have been necessary. It was not supposed that persons would or ever could use this thoroughfare in conjunction with these railroad tracks occupying the street, without constant risk and great danger, and hence it became necessary that this further pre-

caution should be taken to secure their safety. The tracks were at the terminus of these roads leading into a great commercial city, and trains were necessarily passing, one or the other way, every few minutes, at all hours of the day.

The very fact that a flagman was deemed necessary, and was employed, shows that the caution usually required of persons crossing railroads at other places would be insufficient to protect them from danger. Hence the employment of other and greater means of safety, in a flagman, whose duty it was to look out for passing trains, and to warn persons and prevent them from incurring approaching danger. Were the ordinary precautions required of persons crossing railroad tracks sufficient, then such an officer would be wholly useless. But we regard it as clear, that such precautions at a place of the character of this, are not sufficient, and the omission of the flagman to be at his post, and in the discharge of his duty, is great negligence. Had the flagman been there, and fairly discharged his duty, can any one doubt that deceased would be still living? We presume not. Had he been warned, he would not have crossed until the train had passed. Again, the ringing of a bell or sounding of a whistle, as duty required, would have greatly enhanced his chances of escape. It would have attracted his attention, and he would, no doubt, have escaped. He knew, or is supposed to have known, that the law required the company to ring the bell or sound the whistle, and knowing that to be its duty, he had a right to rely upon its performance. On hearing no such signal, his attention was not attracted to his peril, but its omission was highly calculated to lull him into a fatal belief of security. At the time, the place, and under the circumstances, we regard it as gross negligence to have omitted the duty. If, then, this duty was omitted, the company was properly held liable for negligence, unless deceased was guilty of such negligence as would preclude a recovery.

If the jury found that the train was running at a greater rate of speed than allowed by the ordinance, and that was true,

as some of the witnesses testified, it was well calculated to throw deceased off his guard. He, no doubt, as he lived in the city, knew that the speed of the train was limited by law, and he had every reason to suppose that the engine-driver would observe it. If he looked and saw the train approaching, he had a right to believe that it would run only at the rate of not more than six miles an hour, and he, no doubt, calculated what distance he could progress before the train would reach the point of his crossing. And, if so, his calculation was, no doubt, correct that he could pass over before the train arrived, coming at that speed. But if it was running at double that, or even less, but a greater speed than the ordinance allowed, deceased would be wholly disappointed and liable to the collision.

The fact that the train struck him as it did, raises an irresistible presumption, that if the train was running faster than six miles an hour, that was the immediate cause of his death. If it was running 18 or 20 miles an hour, as a witness testified, or very fast, as a number of other witnesses testified, there can be no doubt that the unauthorized rate of speed was the cause of his death. If the speed was greater than the ordinance allowed, then the employees, considering all the circumstances, were guilty of recklessness that is wholly unjustified.

But was deceased guilty of such negligence as to bar a recovery? The evidence tends to show that he may have been guilty of some negligence, but we are unable to say that it preponderates on the side that he was. It is urged that he should have looked up and down the track to see if a train was approaching, and failing to do so, he was guilty of negligence. If the proposition was conceded, in its greatest breadth, the evidence fails to show that he did not do so, or that he came to his death by failing to take that precaution. Suppose he did look, and the train was running at too great a rate of speed, and no bell was ringing or whistle sounding,

and no signal was given by the watchman, can any one say that there was a want of care if he looked and saw the train ?

We have seen that he had a right to rely upon the company's observing its duty in respect to each of these requirements. And he had an undoubted right to regulate his conduct accordingly. If the train was at such a distance from the crossing, that, at the prescribed speed, it could not reach the place he crossed before he could pass over the track, no one can say he was guilty of negligence.

Suppose he did look up and down the track, and he did see the head-light, and heard no bell or whistle, had he any reason to suppose the train was in motion, and as it was dark and he could not see it in motion, can any one say that he was guilty of negligence in attempting to cross? Surely not. Or seeing the train with the light headed towards him, and not seeing the train in motion, not hearing any signal from the bell or whistle, not having received any warning from the watchman, who was stationed there to know if there was danger and to give warning, and relying upon the trains not running at a speed of more than six miles an hour, can he be held guilty of negligence, as though the road had complied with these requirements ? Most assuredly not.

Even if deceased was guilty of slight negligence, the evidence fully warranted the jury in finding his was slight and that of the company gross, at least, in not giving the warning to deceased.

After a careful examination of the entire evidence, we are unable to say that it is not sufficient to sustain the finding. Nor can we say it is contrary to appellant's instructions.

We perceive no error in the refusal of the court below to grant a new trial, and the judgment must be affirmed.

*Judgment affirmed.*

Mr. Justice Scholfield took no part in the decision of this case.