LOUISA B. KLANOWSKI, ADMX. v. THE GRAND TRUNK RAILWAY COMPANY.

*Railway injury—Crossing track.*

1. A man crossing a railway track after dark in a wagon was struck by a passing train and killed. Whether the train was hidden from view by intervening shrubbery, and whether any signal of its approach was given, were disputed question of fact. *Held*, that so far as these facts involved the legal duty of the railroad company, they must go to the jury.

2. In an action for fatal negligence a computation of the probabilities of life, based upon Haswell's tables, is inadmissible for the purpose of fixing damages.

Error to Wayne. (Jennison, J.) April 23—Sept. 29.

CASE. Defendant brings error. Affirmed.

*E. W. Meddaugh* for appellant. Testimony that witness did not see or hear cannot balance that of another witness that he did: *Seibert v. Erie R. Co.* 49 Barb. 583; *Culhane v. N. Y. Cent. & H. R. Co.* 67 Barb. 562; *Henze*

*v. St. Louis &c. R. Co.* 71 Mo. 636; the speed of a train is not necessarily an element of negligence: Pierce on Railroads 354 n. 5; *Grows v. Maine Cent. R. Co.* 67 Me. 105; *McKonkey v. C. B. & Q. R. Co.* 40 Ia. 206; a scintilla of evidence is not enough to go to a jury: *Rider v. Wombwell* L. R. 4 Exch. 38; *Wheelton v. Hardisty* 8. El. & Bl. 262; *Toomey v. L. B. & S. C. R. Co.* 91 E. C. L. 149; 3 C. B. (N. S.) 150; *Randall v. B. & O. R. Co.* 109 U. S. 482; *Pleasants v. Fant* 22 Wal. 122; *Bowditch v. Boston* 101 U. S. 18; *Improvement Co. v. Munson* 14 Wal. 448; *Metr. R. Co v. Jackson* L. R. 3 App. Cas. 197; *Wittkowsky v. Wasson* 71 N. C. 454; *Baldwin v. Shannon* 43 N. J. L. 602; *Hyatt v. Johnston* 91 Penn. St. 200; neglect to stop before crossing a railway track is negligence per se: *Haas v. G. R. & I. R. Co.* 47 Mich. 401; *Penn. R. Co. v. Beale* 73 Penn. St. 504; contributory negligence will defeat a recovery even where defendant has been negligent: *Abend v. Terre Haute & Indiunapolis R. Co.* 17 Am. & Eng. R. Cas. 614; *Central Rd. Co. of New Jersey v. Feller* 84 Penn. St. 226; *Nor. Penn. R. Co. v. Heileman* 49 Penn. St. 60; *Flemming v. W. P. R. Co.* 49 Cal. 253; *Fernandes v. Sacramento City R. Co.* 52 Cal. 45; *Artz v. C. R. I. & P. R. Co.* 34 Ia. 154; *Schaeffert v. Chic. &c. R. Co.* 34 Am. & Eng. R. Cas. 696; *Benton v. Cent. R. Co.* 42 Ia. 192; *Turner v. Hannibal &c. R. Co.* 74 Mo. 602; *Penn. R. Co. v. Righter* 42 N. J. 180; *Moore v. Railroad Co.* 24 N. J. L. 280; *D. L. & W. R. Co. v. Toffey* 38 N. J. L. 525; *Bellefontaine R. Co. v. Hunter* 33 Ind. 335; *Donaldson v. M. & St. P. R. Co.* 21 Minn. 295; *Gorton v. Erie R. Co.* 45 N. Y. 660; *Trow v. Vt. Cent. R. Co.* 24 Vt. 494; *Wheelock v. B. & A. R. Co.* 105 Mass. 206; *Butterfield v. W. R. Corp.* 10 Allen 532; *Fletcher v. A. & P. R. Co.* 64 Mo. 484; *Lewis v. B. & O. R. Co.* 38 Md. 597; *State v. P. W. & B. R. Co.* 47 Md. 76; *Salter v. U. & B. R. Co.* 75 N. Y. 273; *Curry v. C. & N. W. R. Co.* 43 Wis. 665; *Moore v. Mayor of Shreveport* 3 La. Ann. 645; *Dickey v. Maine Tel. Co.* 43 Me. 492; *Miss. Cent. R. Co. v. Mason* 51 Miss. 234; *M. & C. R. Co. v. Copeland* 61 Ala. 376; *Campbell v. A. & R. Co.* 53 Ga. 488; *Branan v. May* 17 Ga. 136; *Williams v. M. C. R. Co.* 2 Mich. 259; *Mich. Cent. R. Co. v. Campau* 35 Mich. 468; *LeBaron v. Joslin* 41 Mich. 313; *Davis v. D. & M. R. Co.* 20 Mich. 105; *M. C. R. Co. v. Leahey* 10 Mich. 193; *Kelly v. Hendrie* 26 Mich. 255; *D. & M. R. Co. v. Van Steinburg* 17 Mich. 99; *Schofield v. C. M. & St. P. R. Co.* 8 Fed. Rep. 488; *Tucker v. Duncan* 9 Fed. Rep. 867; *Holland v. C. M. & St. P. R.*

*Co.* 18 Fed. Rep. 243; *Railroad Company v. Jones* 95 U. S. 439; *Griggs v. Houston* 104 U. S. 553; *Farlow v. Kelly* 108 U. S. 288; *Davies v. Mann* 10 M. & W. 546; *Bridge v. Grand &c. R. Co.* 3 M. & W. 244; *Tuff v. Warman* 5 C. B. (N. S.) 573; *Radley v. Loud &c. R. Co.* L. R. 1 App. Cas. 754; Cooley on Torts 672; Pierce on Railroads 323; a witness cannot support his computation as to the probabilities of life in a case of fatal negligence, by reference to tables: *Scheffler v. Minneapolis &c. R. Co.* 32 Minn. 518.

*Griffin & Warner* for appellee.

SHERWOOD, J.    Otto Klanowski, on the 23rd day of June, 1883, lived with his family, consisting of himself, his wife and four children, upon six acres of land, situated on Chene street near the city of Detroit, and about a mile from where the same crosses the Grand Trunk Railway. He was a teamster owning a team and wagon, and on that day had been plowing for a neighbor by the name of Miller, who lived upon what is called the "Miller Road," which runs east of Chene street, and across the railway track diagonally about 24 rods north-east of the Chene street crossing. This was known as the "Miller Crossing." Still further north-east, about three-quarters of a mile on the line of the railway, is what is known as "Biglow's Crossing" on Court street.

On the evening of the 23rd of June aforesaid, between nine and ten o'clock, Klanowski started to go home from his work at Miller's with his team and wagon, having his son, Emil, with him, a lad about fifteen years old, and who drove the team. In making the crossing upon the Miller road, they were overtaken by the Montreal Express, consisting of three coaches, a baggage car, and the engine, which came down upon them from the northeast at the rate of forty miles an hour, the engine striking the wagon just as it was about leaving the track and completely demolishing it, killing Mr. Klanowski almost instantly, greatly injuring the son, breaking his thigh and shoulder, and killing one of the horses. On the 7th day of August following, the plaintiff, who was the wife of the deceased, was duly appointed

administratrix of the estate, and on the 19th day of September thereafter, she brought this suit to recover for the injury and damages she and her children had sustained by the alleged negligent act of the defendant in killing her husband, and destroying his property. No question arises upon the pleadings.

The case has been twice tried in the Wayne circuit court, and the plaintiff obtained a verdict upon each trial, which in the first was set aside in the circuit court, and the proceedings upon the second trial are now before us for review, brought up by writ of error, the record showing a bill of exceptions containing the substance of all the testimony taken upon the trial. Thirty-four assignments of error are presented for our consideration. When the plaintiff rested her case, counsel for defendants asked the court to direct the jury to render a verdict for the defendant on the ground that the deceased contributed to the injury, and at the close of the trial requested the court to charge the jury " that, under the testimony in this case, the plaintiff is not entitled to recover, and the verdict of the jury should be for the defendant." The court declined in each case to give the instruction asked, and exceptions were duly taken. These exceptions are properly first to be considered, because, if these rulings of the court were wrong, it is unnecessary to give attention to the other errors claimed. A view of the premises where the collision occurred and the deceased was killed, was taken by the jury under the direction of the court.

There are certain statutory duties required to be observed and performed by a railway company in this State, intended to prevent injury and accidents to persons and property at railway crossings and other places of danger. These requirements are made for the benefit of passengers, strangers and travelers on the highway (*Evans v. Atlantic &c. R. Co.* 62 Mo. 49), and such duties cannot be neglected or omitted with impunity. If they are, and an injury to persons or property occurs by reason thereof at such places, the company will be liable ; and although the party injured under

such circumstances, by his acts, or omissions to act, induced by the negligence of the company, may be guilty of some faults which contributed to the injury complained of, such fault ought not to be permitted to avail the company in making defense against their wrongful acts, unless it was wilful, or so gross as to render it equally inexcusable. Any other rule would allow the company to take advantage of its own wrong in avoiding its statutory liability.

In approaching a crossing upon a highway the circumstances differ in almost every case. Sometimes they are favorable to making an early discovery of the train, and many times not; sometimes the team requires more attention than at others; in some cases the approach to the track up and at others down; some persons have quicker sight than others and can see at far greater distances; at some crossings the train moves on an up grade and at others on a down grade, and the road-bed often being elevated and not unfrequently depressed below the surface of the highway, and in most cases the view is more or less obstructed by fences, bushes, shrubbery or embankments. Many times the train runs much stiller than at others in consequence of the condition of the atmosphere and other causes; in all cases, persons, except those in charge of the train, are liable to be deceived in the speed of the train, and in no case is the exact time when the engine reaches the crossing known to others than the engineer. For these and many other reasons which might be given no other safe rule can be adopted. No less than the giving of every warning the law exacts should be held sufficient to shield the company from liability for damages arising from injuries received at such places. Safety to the lives of those traveling upon the cars, as well as to those traveling in vehicles upon the highway, requires this. All persons have a right to expect and rely upon the full performance by the company of all the requirements and duties imposed upon it by the law under which it alone is allowed to exist and do business, and it is not unfrequently impossible to ascertain with any degree of certainty how far the neglect of the company to give the required warnings at highway

crossings may have been relied upon by a person in regulat-
ing and determining his action in approaching the track
where a collision and injury occurs resulting in his immedi-
ate death.   Usually the circumstances surrounding the acci-
dent have to be relied upon in determining the question, and
such action on the part of the injured party should never, in
this class of cases, be allowed to control the verdict of jurors·
unless it satisfactorily appears to have been very gross, or
wantonly negligent and careless.   It was the duty of the
defendant in this case, under the statute, to twice sharply
sound the whistle of the locomotive at least forty rods before
reaching the crossing, and to ring continuously the bell for
the entire distance.

These are very important and significant warnings.   It is
claimed upon the part of the plaintiff these signals of the
approaching train were not given ; and if there is testimony
in the case tending to show the claim was true, it was cer-
tainly the duty of the court to submit the case to the jury
upon that point.   On the part of the defendant the conduc-
tor, engineer, fireman, brakeman and another employee of
the company, who was a passenger upon the train, all gave
testimony that the statutory signals were given.   On the part
of the plaintiff were sworn the son of the deceased, who was
in the wagon and driving the team at the time the injury
occurred ; Mr. Alstadt, who was sitting by the side of the
track about twenty rods from the Miller road, and heard the
crash ; Mr. Moebly, who was within a short distance of the
train and heard it coming ; Mr. Harris, who was with Moebly,
and first saw the train at the Biglow crossing, and saw it
when it crossed the Miller road ; Mr. Schmidt, who lived on
Chene street, near the railway crossing, and about two hun-
dred paces from the Miller crossing, and heard the crash and
heard the train a short time before ; Mrs. Schmidt, who was
in her kitchen door and heard the crash ; George Strikle,
who was in the wagon with Mr. Moebly when the train
passed near the Miller house, and heard it ; Kate Strikle,
who was in the wagon with Mr. Moebly at the time the train
passed ; and Maggie Moebly, who was also in the vicinity of

the accident when the train passed.   All these witnesses were between the whistle post and the Chene street crossing, or very near, when the accident occurred, and within hearing distance of the signals if they were given, and all testify that the bell was not rung nor the whistle sounded, and most of them are very positive on the subject.  It is true, the testimony of these nine witnesses is contradicted by the five employees of the company, and that several of the nine occupied positions and relations to the son and father's estate which would naturally tend to bias them in favor of the plaintiff's side of the case, and the cross-examination of some of them somewhat modified the testimony given on the direct; and similar criticisms may be properly made as to the testimony of defendant's witnesses; but as the case went to the jury upon this point, I cannot understand how it can be said that there was no testimony tending to prove that the signals were not given, or sufficient to be submitted to the jury.

These nine witnesses are not materially discredited save by the testimony of the five sworn on the part of the defense. The testimony for the plaintiff, as it stands in this record upon this subject, rises to the plane of evidence, and as such was entitled to the careful consideration of the jury.   It raised the question of credibility of the defendant's witnesses, which is always a question for the jury, and, if believed, was quite sufficient to fix inexcusable negligence on the part of the defendant, and it would clearly have been usurpation in the court to have otherwise treated it.

It is said by counsel that the testimony of plaintiff's witnesses on this point is all negative in its character.   This is true : but the fact which the law requires her to establish is also a negative one, and the value and weight of this class of testimony must necessarily depend upon the circumstances affording opportunity to render certain the facts stated ; for instance, a brakeman, located upon a train five coaches from the engine or bell, is no more likely to hear the signals when made than a person standing upon the ground or sitting in a wagon listening for them at the same distance, when both are giving equal attention ; and if the two are equally

credible, there is no reason for believing the testimony of the one in preference to that of the others. The varying circumstances and surroundings can easily be brought out upon the trial and placed before the jury, and it is their duty to weigh them and ascertain the importance of each. It is no part of the duty of the court to balance up the evidence and determine the preponderance. The court can only consider the testimony so far as to determine whether there is any evidence to be passed upon, from which all inferences the jury may justifiably draw therefrom will be sufficient to support a verdict for the plaintiff, and if not, the court may direct a verdict for the defendant. And in a case like the one before us, it is the duty of the trial judge to determine whether any facts have been established by the evidence of the plaint- iff from which negligence may be reasonably inferred. And it is for the jury to say whether, from these facts, negligence ought to be inferred. Such I understand to be the law. *Randall v. Baltimore & O. R. Co.* 109 U. S. 482: s. c. 3 Sup. Ct. Rep. 322; *Pleasants v. Fant* 22 Wall. 122; *Metropolitan Ry. Co. v. Jackson* L. R. 3 App. Cas. 197; *Wittkowsky v. Wasson* 71 N. C. 454; *Hyatt v. Johnston* 91 Penn. St. 200.

In determining the question whether the case should or should not be submitted to the jury, the court cannot pass upon the credibility of the witnesses, or that of the other testimony in the case, but must assume the plaintiff's testimony to be true. If the court is satisfied that gross injustice has been done the defendant by a mistake of the jury, after proper instructions as to their duty in weighing and scrutinizing the testimony have been given, an opportunity should be afforded to make the correction by the circuit judge granting a new trial. I quite agree with the learned counsel for the defendant that in a case like this a witness, or any number of them, who simply testify that they did not hear the whistle sounded, or the bell rung, would furnish little or no evidence of the fact, unaccompanied by other circum- stances, even though it was apparent that they might have heard both, had they been listening or had their attention

challenged to the fact, and that such statements hardly rise to the grade of competent testimony as against the evidence of one who swears, not only that he heard the signals, but himself gave some of them; but when a credible witness testifies that he was within hearing distance of the signals, and states positively that the bell was not rung nor the whistle sounded, and that he saw the train and the accident when it occurred, the testimony stands on a different basis, and cannot be discarded by court or jury, but must be considered with the other evidence in the case; and the fact that such a witness testifies upon his cross-examination that he did not hear the signals is not inconsistent with his former testimony, and in no sense necessarily weakens it, unless that was all he intended by his first statement. I do not think the cases cited by defendant's counsel go further than I have herein indicated upon this subject. *Jewell v. Parr* 13 C. B. 915; *Seibert v. Erie Ry. Co.* 49 Barb. 583; *Culhane v. New York Cent. Ry. Co.* 67 Barb. 562; *Henze v. St. Louis &c. Ry. Co.* 71 Mo. 636. The verdict is general, and, of course, against the defendant on this point, and should not be disturbed unless testimony was erroneously admitted upon which it was based.

This injury occurred at a street crossing in the evening between nine and ten o'clock. The night was quite dark, and it is undisputed that the train was running at the rate of forty miles an hour, or about three rods per second, as it approached the crossing, going into Grand Junction. The crossing also appears to have been frequented by people traveling on foot and in vehicles by night and by day. There was also testimony in the case tending to show this to be a dangerous crossing, particularly in the night time. Emil Klanowski and Henry Valkner gave testimony upon this point. In addition to their statements the jury took a view of the premises under circumstances which must have aided in arriving at a correct conclusion upon this subject; and it is claimed by plaintiff that the rate of speed at which the crossing was approached and made by defendant's train was too great—unreasonably so—and sufficient alone to account

for the injury which occurred. We have no statute limiting the speed at which trains shall be run, either at highway crossings or elsewhere ; neither has any by-law of the city of Detroit been called to our attention upon this subject, if the crossing was within the city limits, which does not appear by the record. Where there are such limitations by statute or local ordinance a rate of speed greater than that prescribed is generally regarded as gross negligence on the part of the company. *Chicago &c. R. Co. v. Becker* 84 Ill. 483 ; *Massoth v. Delaware &c. Canal Co.* 64 N. Y. 524, 531 ; *Karle v. Kansas City &c. R. Co.* 55 Mo. 476 ; *St. Louis, V. & T. H. R. Co. v. Dunn* 78 Ill. 197, 199. When no restriction by statute exists, an unusual rate of speed at crossings must be held to impose upon the company increased vigilance, as well as increased liability. And when from such cause the lives of persons or animals are endangered, and injury ensues, there can be, it seems to me, no reason why it should not be considered a want of proper care. The authorities generally hold such increased speed to be a proper subject for the consideration of the jury (*Artz v. Chicago &c. R. Co.* 44 Iowa 284 ; *Black v. Burlington &c. Ry. Co.* 38 Iowa 515 ; *Indianapolis &c. R. Co. v. Stables* 62 Ill. 313 ; *Wilds v. Hudson River R. Co.* 29 N. Y. 315, 327 ; *Rockford &c. R. Co. v. Hillmer* 72 Ill. 235, 240 ; *Massoth v. Delaware &c. Canal Co.* 64 N. Y. 524, 531 ; *Warner v. New York &c. R. Co.* 44 N. Y. 465) ; and it has been held that twenty-five or thirty miles is an unreasonable rate of speed when approaching a crossing. *Reeves v. Delaware &c. R. Co.* 30 Penn. St. 454 ; *Massoth v. Delaware Canal Co.* 64 N. Y. 524. Each case must necessarily depend upon its own peculiar circumstances ; and whether or not proper care was made to appear in this particular was a question of fact for the jury, under proper instructions from the court.

I think the record shows a case of unusual speed and want of proper care under all circumstances ; a half second less speed would, in all probability, have saved one life and injury to another, the extent of which time alone can determine. The evidence of the engineer shows that the speed was so

great as to render the brakes comparatively useless for the purpose of preventing accident upon the crossing. The loss of life is becoming fearful in this class of cases, to say nothing of the amount of maiming and damage to property ; and while courts are powerless to remedy the evil, it is their duty to see to it that such negligence as is culpable, when presented to them for adjudication, shall not be unreasonably or unlawfully excused. It is not only within the power of the company, but it is a duty they owe to the traveling public, to remedy such negligent action. If it cannot entirely prevent it, it can greatly lessen the evil; and until such power is exercised and duly performed, it must abide the natural consequences of such neglect. Any other view would be outrageously unjust. I am not prepared to accept the intimation of the court in *McKonkey v. Chicago, B. & Q. R. Co.* 40 Iowa 206, that no conceivable rate of speed is *per se* evidence of negligence; neither my reason nor judgment approves it, and certainly all experience is the other way. Can it be doubted that every mile added to the speed of a train does increase the liability to accident; and if this be true, can it be doubted that were it increased to one hundred miles an hour it would be difficult to confine the train to the track in many places? To expose human life to such a risk would, in my judgment, be gross negligence on the part of the company.

The case of the *Grand Rapids & I. R. Co. v. Huntley* 38 Mich. 540, I do not think has any application to the one we are considering. In that case the injury occurred by the breaking of an axle. It does not appear that the train was approaching a crossing or any other place of danger, or that the speed of the train had anything particularly to do with the injury complained of, or the accident that caused it ; and under the facts stated in the case, I think we must all agree that it was rightly decided.

The next question to be considered, under the view I have taken of the case, is, was the deceased guilty of that degree of carelessness which should excuse the defendant, even though negligent in the respect claimed by plaintiff ? Defend-

ant's counsel insists that he was, and that the undisputed
testimony shows such to be the fact beyond a doubt.  If
counsel is correct in his view of the subject, it was then the
duty of the court to direct a verdict for defendant.  After a
careful examination of all the testimony in the case bearing
upon that point, I am unable to arrive at the conclusion
reached by the learned counsel.  The deceased, with his son
Emil, started from Miller's house to go home, the son driving
the team.  They had to go twenty-six rods down the Miller
road before they came to Miller's crossing.  The defendant's
track ran diagonally across the Miller road.  The track was
somewhat elevated above the Miller road, and the testimony
tends to show the view from the Miller road was much
obstructed by the company's fence, and weeds and bushes
which had grown to a height of several feet above the fence,
and to use the language of one of the witnesses, " It was a
mean track to cross;" that there was upon the side of the
track, and sixteen feet therefrom, a ditch and a narrow bridge
over the same, about eight feet wide, to cross.  Emil Klan-
owski says, in his testimony:  " After leaving Miller's house
they started to drive home; he was driving, sitting on a
board across the wagon box, at the right hand of his father;
they drove up near the crossing, and stopped at the telegraph
pole (sixty-five feet from the track) ; they stopped to see the
cars, and could not see them; there were too many weeds
around them; they did not hear them; no whistle was blown
or bell rung; it was cloudy,—not very dark, and not very
light; could not see the light very well; the horses were
gentle ; drove from Miller's house on a walk; could not see
the track from Miller's house, there were so many weeds on
the side of the track ; they were a good deal higher than the
engine and cars; could not see anything for the weeds, that
night; it was dark around there; could not see the track
until they got there; had to go up hill to get upon the track;
had never been on that road before, or at Miller's house;
first looked for the train at the telegraph pole; stopped to
look; thought the wagon was in the middle of the road five
or six feet from the telegraph pole; he looked both ways;

did not hear its whistle or the bell ring, or see the train ; she did not whistle ; they stopped at the pole to see if they could hear any train coming ; did not hear or see any ; had to pass over the bridge after he stopped ; after he started he was looking so that he could get over the bridge ; his attention was on his team and driving it ; there were two tracks there which he had to cross ; the bridge was about six feet from the track ; he did not see the train ; he looked until he got to the bridge ; did not look for the train after he got onto the bridge ; they stopped at the telegraph pole ' a good little while ;' could not have seen the train from the pole if there had been one, because there were such big bushes beside the fence ; you could not see the train until you got on the track ; walked the horses across the bridge ; drove slowly across the track ; the bridge runs slanting ; it is a small bridge, and not fit to go over with two horses ; it is about four feet high from the ditch ; that he did not look after the train after he got on the bridge, because he had to look out that he did not get into the ditch."

This is the statement of the survivor of the catastrophe of that fatal night ; and from it, it appears that he stopped his team for some time only sixty-five feet from the track, and looked both ways and listened before he approached the crossing, but did not hear or discover the train.    This is all he could be required to do under the decisions of this Court. *Lake Shore & M. S. R. Co. v. Miller* 25 Mich. 290 ; *Haas v. Grand Rapids & I. R. Co.* 47 Mich. 401 ; *Chicago & N. E. Ry. Co. v. Miller* 46 Mich. 533.    That he did not see or hear the train, if his statements are true, was clearly the fault of the company in allowing the view to be obstructed and not giving proper signals, and not that of the young man. I do not think any such contributory fault on the part of the plaintiff is shown as would warrant the court in directing the verdict, and the ruling of the circuit judge to that effect was entirely proper.    If there was any doubt upon the question, it was the duty of the court to give the case to the jury. *Teipel v. Hilsendegen* 44 Mich. 461 ; Pierce on R. R. 314, et seq.    I am aware that there was strong testimony given tend-

ing to show that the young man was mistaken as to the amount and character of the obstructions, but that testimony cannot be considered in the discussion of the position taken by defendant's counsel upon the point he makes.

Quite a large number of cases have been called to our attention by counsel for defendant in his brief, upon the subject of contributory negligence where injuries have been received at highway crossings, but a careful comparison of the facts in each with those in the present case will show a material difference. Some of them, however, are quite similar in many of their features; but I feel very certain that justice requires that omissions by the plaintiff which are not the result of negligence, or which may be fairly attributable to such fault on the part of the defendant, in such cases should not be regarded as contributory, and so far as any of the cases hold differently I should be unwilling to agree with them. I cannot consent under any circumstances to make the negligence of the company a shield and a weapon for its defense.

Witness Warner was examined on the part of the plaintiff, and testified to the pecuniary value of the life of the deceased to his family. The testimony was objected to by counsel for defendant, who asked to have the same stricken out on the ground that it was incompetent and irrelevant, and because it was made on a basis not warranted by the testimony in the case. I do not think the objection well founded. The testimony of the wife furnished all the data except Haswell's tables, which the witness used in making his computation. His testimony was a mere computation, which the jury could accept or not as they chose, according to their view of the testimony. The testimony was competent, and such as it is usual to resort to in such cases. The defendant could not be prejudiced by it, and no error was committed in receiving it. *Chicago & N. W. Ry. v. Bayfield* 37 Mich. 205.

I have now considered all the grounds relied upon for a reversal of the judgment in this case, and argued in the defendant's brief. The discussion contained therein relating to the demerits of the jury in our system of jurisprudence

would be more properly addressed to the law-making power, or some branch thereof, than to this Court. We have not the privilege of making the laws, but are charged with the duty of expounding them, and seeing to it that they are properly applied; further than this we cannot, and I think ought not, to go.

The charge by Judge Jennison was clear, and applicable to the facts in the case. I have discovered no error therein, or in his rulings upon the trial, of which the defendant can reasonably complain, and the judgment should be affirmed.

CHAMPLIN, J. I agree with my brother Sherwood in the result he has reached, and I agree with my brother Campbell that the testimony of the witness based upon Haswell's tables' was inadmissible; but I do not think that the jury were misled thereby, as their verdict does not appear to be based upon this testimony, and the other testimony was sufficient to warrant the verdict they gave.

CAMPBELL J. The views expressed by my brother Sherwood upon some points are, I think, open to misapprehension, and while I think the case could not have been taken from the jury altogether, it is, in my opinion, only because the court could not pass upon disputed facts, and not because, as matter of law, it could be held that negligence was so made out as to entitle complainant to any such ruling.

It is not negligence for a company, chartered and authorized to carry on a business involving necessary risks, to do so in the usual and appropriate manner, and under such precautions as the law requires. When this is done the risks must be regarded as not involving fault. The party who seeks to recover must aver and prove in what manner the company has failed to do what it was a legal duty to do under the circumstances, and that the injury which resulted is caused by the averred wrong. In this case I am not prepared to say there was not conflicting testimony upon matters of legal duty on which the jury could properly pass, and therefore the case could not have been taken from them. But they could not

be told as matter of law that any specific duty rested on the company which the law has not laid upon them. The speed of trains has not been so regulated in general, and has not been so far as the facts of this case are concerned.

I also think there was error in allowing Mr. Warner to testify to the jury what damages the family has sustained by the death of its head. The damages can only be what the family have lost in a pecuniary sense by his death. To ascertain this it was no doubt proper to allow considerable inquiry into the extent to which he contributed to their support. But so far as the probabilities of their or his future are concerned, the whole is so far conjectural that, so far as anything can be based upon such probabilities, it is not a matter for experts or witnesses, but for the jury, and no one else, subject to such restraint against excessive estimates as will prevent mischief. It would be absurd to suppose as a matter of fact that in a given case a particular person would live the full term of years which only few persons attain, or do in his old age all that he could do in his youth, or that a family of grown-up persons would depend upon him as children would in infancy. It is only because there is no certainty that any speculation is allowed at all, but to allow witnesses to give to the jury their guesses on the subject would be dangerous in the extreme.

There should be a reversal and new trial.

COOLEY, C. J. concurred.