Mr. Justice Shepard
delivered the opinion of the Court:
1. The practice, apparently so general, of moving the direction of a verdict for the defendant upon the close of the plaintiff’s evidence, in cases of this character, adds greatly to the responsibility as well as to the labor of the courts, and whilst proper enough in itself, should .only be indulged in cases where the duty of the court to take the case from the jury can be made to appear perfectly plain. The right to have the facts determined by the jury ceases only when but one reasonable view can be taken of the evidence and of its every intendment, and that view is utterly opposed to the plaintiff’s right to recover. The court below did not err in refusing the defendant’s motion in this case.
The facts are materially different from those passed upon by the court in R. R. Co. v. Houston, 95 U. S., 697. They *109 more nearly resemble those in R. R. Co. v. Powers, 149 U. S., 43, which was a case where a person leaving a car at a station, and encumbered with baggage, was run down by a train while crossing the track.
In that case a motion was made to order a verdict for the defendant, on the ground of contributory negligence of the plaintiff, and denied. The court said:
“ It is well settled that where there is uncertainty as to the existence of either negligence or contributory negligence, the question is not one of law, but of fact, and to be settled by a jury; and this is whether the uncertainty arises from a ■conflict in the testimony, or because the facts being undisputed, fair-minded men will honestly draw different conclusions from them.”
In a later case in the same court, the plaintiff had first brought his suit in a State court and recovered a judgment, which had been reversed on appeal; he then took a nonsuit and brought his action in the Federal court, and on the trial therein the jury was instructed to find for the defendant. This judgment was reversed. Gardner v. R. R. Co., 150 U. S., 349. In reversing the judgment for this error, the court, speaking through the Chief Justice, said:
“The question of negligence is one of law for the court only where the facts are such that all reasonable men must draw the same conclusion; or, in other words, a case should not be withdrawn from the jury unless the conclusion follows, as matter of law, that no recovery can be had upon any view that can be properly taken of the facts the evidence tends to establish.” See also R. R. Co. v. Maugans, 61 Md., 53.
Two different conclusions can be drawn by reasonable men from the evidence in this case. Assuming plaintiff’s ■evidence to be true, the defendant was clearly negligent in not closing the gate which barred the entry to the track. Had this gate been closed the accident could not have happened. The sole question, then, is whether the same evidence shows ■clearly that plaintiff was guilty of contributory negligence in *110 such degree as to take away his right to recover for the result of the defendant’s negligence. It is not true that every fault or want of care on his-own part, preceding the receipt of an injury, will deprive the injured party of the right to recover therefor from the party inflicting it. The question, what shall constitute proper care in crossing a railroad track, or in any other place or moment of danger, cannot be considered and determined in the abstract and applied to all cases as they arise.
The existence of culpable negligence must necessarily depend upon the facts and circumstances of each particular case in which it is claimed. Contributory negligence is not presumed to exist in any case, and must be established by the defendant, unless it necessarily appears in making out the plaintiff’s own case.
The evidence in this case shows that the plaintiff’s intestate was driving a gentle horse, attached to a heavy wagon with five persons in it besides himself. Richardson, the watchman, said he was running as fast as he could, while Brandt, who was walking behind the wagon, says that the horse was in a walk. The plaintiff’s intestate did not stop his horse before driving on the track. He was instantly killed, and whether he actually looked and listened for the train is a fact the proof of which died with him. If the presumption cannot be indulged as matter of law that he did look and listen, it cannot certainly be indulged that he did not. Whilst it may be said that ordinarily a man, before crossing a railway track, should stop as well as look and listen for approaching trains, there is no rule of law that he shall always do so. There is no law which required the defendant to keep a gate at this crossing and a man to lower it before the passage of trains; but having done so for a series of years, persons using the crossing constantly would have some right to suppose that no trains were coming when the gate was up. Warner v. R. R. Co., 45 Barb., 299. The fact that there was a gate, and that it was the constant practice to lower it when trains were passing, or about to pass, and that *111 it was not lowered on this occasion, was one proper to be considered by the jury in determining the question of the contributory negligence of the plaintiff’s intestate. Casey v. R. R. Co., 78 N. Y., 518 ; Ernst v. R. R. Co., 39 N. Y., 61 ; McGrath v. R. R. Co., 63 N. Y., 522; R. R. Co. v. Yundt, 78 Ind., 373 ; R. R. Co. v. State, use of Hauer, 60 Md., 449; Dolan v. Canal Co., 71 N. Y., 285.
In the last case, a flagman was customarily present .to give notice of coming trains. The party attempted to cross in a wagon; some cars obstructed his vision on the side the train came from; the flagman was not there, and he drove onto the track without stopping. The court held that negligence could not be imputed to him as matter of law, but was for the jury to determine, and affirmed a judgment for the plaintiff.
In Glushing v. Sharp, 96 N. Y., 676, the party attempted to cross in a covered milk wagon which he drove. He looked down the road once some distance from the track and saw no train. The gate was up. Had he stopped a'second time nearer the track he could have seen the train in time to save himself, but he did not do so. The judgment for the plaintiff wás affirmed, the court saying: “The raising of the gate was a substantial assurance to him of safety, just as significant as if the gateman had invited him to come on, and that any prudent man would not be influenced by it is against all human experience.”
In Warner v. R. R. Co., 45 Barb., 299, the Supreme Court of New York in general term went so far as to approve an instruction to the jury, in a case where the flagman was absent when the party attempted to cross, that “ the public would have a right to suppose that no trains were coming when he was absent.”
In Bank v. Morgolofski, 75 Md., 432, the plaintiff, seeing the door of the elevator shaft open, and it being quite dark inside, supposed the elevator was there, and stepping in fell down the opening. He recovered a judgment, which was affirmed on appeal. The court held it was a case for the jury and said: “ It is not contributory negligence not to look *112 for danger when there is no reason to apprehend any.” See also R. R. Co. v. Dunn, 78 Ill., 197, which was a case where a party was killed in crossing a railway track on foot when the flagman was absent.
This very question has been decided by the Court of Queen’s Bench in England, in a case which was twice appealed. Wanless v. R. R. Co., L. R. 6 Q. B., 481. In that case the wagon gate was open and fastened back and two boys entered it on foot and started to cross the track. As they were about to step on the track a freight train passed rapidly, which they escaped. Just as the last car passed them they stepped across, and while on the next track were run down by a train coming from the other direction. Held, that it was a case for the jury. Kelly, C. B., said: “ It is the opinion of the majority of the court that it was the duty of the defendant to keep these gates across the road shut when any trains were expected to pass, and that they should be left open when no trains were expected; and that whenever the gates, or either of them, are left open, it is an intimation to the public who may have to pass along the railway, either upon foot or with carts and carriages, that they can pass in safety.” Bramwell, J., alone dissented. Stapley v. R. R. Co., L. R. 1 Exch., 21, which holds to the same effect, was cited with express approval.
It is not at all necessary to go to the full extent of the doctrine announced in all of the above cited cases in order to sustain the refusal of the court to take the case from the jury and direct a verdict for defendant.
2. After what has been said above, it is hardly necessary to discuss the error assigned upon the instructions given and refused. The court gave the instruction asked by defendant as to the duty of the deceased to look and listen before attempting to cross, but refused that which added thereto the duty to stop at the same time. Whether the failure to stop was negligence under the circumstances, was properly submitted to the jury to be considered with the other facts of the case. It was also for the jury to consider whether he *113 probably did or did not look and listen, and if he did not, whether it would have availed him to do so. The witness Brown, who was riding in the wagon, testified that he, just before reaching the track, raised up and looked out; seeing and hearing nothing, he sat down, thinking everything was safe; and immediately afterwards the collision occurred. The train was a delayed express, traveling at least fifty miles an hour. Another witness had said there was a freight train which might possibly have obstructed the vision until too late. - Along with these circumstances, it was unquestionably proper for the jury to consider the probable effect of the condition of the gate at the time upon the action of Godfrey as he approached the crossing. But in this connection, as we have seen, the court stated and expressly denied the plaintiff’s contention that the failure to have the gates lowered “was notice to him that the track was clear and dispensed with the duty on his part of looking about for himself.” The charge of the court was as fair to the defendant as it had any legal right to expect, and we can find no error in it.
3. The evidence of the witness Yates to the effect that he had found the defendant’s gatekeeper, Richardson, asleep in his box at about 6 o’clock on the night of the accident, was admissible.- Whether this man was asleep, some two and a half hours later, was, as we have seen, a material fact in the case. That he had previously gone to sleep at his post was relevant to that issue. In a case analogous to this, it has been held that it was admissible to show that the flagman had been drinking some time before th^ accident. Warner v. R. R. Co., 45 Barb., 299. We are aware of no principle under which this evidence could be excluded.
After a careful consideration of the record and arguments, we can find no error in the proceedings below; and the judgment must be affirmed, with costs. It is so ordered.

Judgment affirmed.