# SUPREME COURT

OF THE

# STATE OF MISSOURI

AT THE

## APRIL TERM, 1890.

---

### Hudson v. The Wabash Western Railway Company, *Appellant.*

1. **Contributory Negligence**: AFFIRMATIVE DEFENSE. Contributory negligence is strictly an affirmative defense and in order to be availed of by defendant as a matter of pleading must be specially pleaded.

2. ——:——. Nor is the foregoing rule affected by the fact that the petition states that plaintiff was injured "without any fault on his part" and the answer denied the averment.

3. **Negligence**: PLEADING: PETITION. It is not incumbent on a plaintiff suing for an injury caused by defendant's negligence to allege that the injury was done "without any fault on plaintiff's part."

4. **Pleading**: ANSWER: NEW MATTER. Whenever a defendant intends to rest his defense upon any fact which is not included in the allegations necessary to the support of the plaintiff's case, he must set it out in ordinary and concise language or he will be precluded from giving evidence of it on the trial. (*Northrup v. Ins. Co.*, 47 Mo. 444, *affirmed.*)

13

5. **Practice**: CONTRIBUTORY NEGLIGENCE: ESTOPPEL. Where the defendants' attorney at the trial disclaims a plea of contributory negligence to be in the case, he will not afterwards be heard to claim the contrary.

6. **Contributory Negligence**: WHEN SHOWN BY PLAINTIFF'S EVIDENCE. While contributory negligence must be pleaded as a special defense to authorize defendant to introduce evidence in support of it, still if plaintiff's own evidence discloses such contributory negligence on his part as to defeat his right of action, defendant may take advantage of it regardless of the fact that it has not been specially pleaded.

7. ———. Where plaintiff's own evidence shows such contributory negligence, it is the duty of the trial court to declare the result to the jury as a matter of law.

8. ———: CLIMBING OVER STATIONARY CARS. The act of climbing over stationary cars without looking to see whether or not they are attached to an engine is such negligence as to preclude recovery for injuries received in the attempt, and this is true although the cars were obstructing the street crossing beyond the time allowed by the city ordinance.

9. ———: ———: PROXIMATE CAUSE. The neglect to observe the ordinance cannot be regarded as the proximate cause of the injury which of itself precludes a recovery.

*Appeal from St. Louis City Circuit Court.*—HON. GEORGE W. LUBKE, Judge.

REVERSED.

*H. S. Priest* for appellant.

(1) The objection to the introduction of evidence, and the demurrer at the conclusion of the evidence, should have been sustained, because of the absence of causal connection between the acts of negligence charged in the petition, or proven, and the injuries which the plaintiff sustained. *Stillson v. Railroad,* 67 Mo. 671; *Brown v. Railroad,* 20 Mo. App. 222; *Henry v. Railroad,* 46 Mo. 293; *Clark v. Railroad,* 39 Mo. 619; *Wyatt v. Railroad,* 6 Best & Smith, 709; Wharton on Negligence, secs. 134, 138 and 200; Patterson's Railway Law,

pages 18, 23, secs. 22, 23; *Railroad v. Trich*, 34 Am. &
Eng. R. R. Cases, 549; *Dahlstrom v. Railroad*, 8 S. W.
Rep. 777. (2) The demurrer to plaintiff's evidence
should have been sustained, because of his contributory
negligence. *Lewis v. Railroad*, 38 Md. 588; *Railroad
v. Dewey*, 26 Ill. 255; *Railroad v. Pinchin*, 31 Am. &
Eng. R. R. Cases, 428; s. c., 112 Ind. 592; *Smith v.
Railroad*, 55 Iowa, 33; *O'Mara v. Railroad*, 18 Hun.
192; *Railroad v. Copeland*, 61 Ala. 376; *Gahagan v.
Railroad*, 1 Allen, 187; *Stillson v. Railroad*, 67 Mo.
617. (3) Plaintiff's instruction number 1 was errone-
ous. One event may follow on account of another, or
one may lead up to another and give occasion to it, yet
in no legal sense be a cause. (4) The court erred in
giving instruction number 3 of plaintiff's series,
because the petition alleged that the injuries were
occasioned "without any fault on his part." The answer
denied this averment, and thus the issue of plaintiff's
contributory negligence was raised. *Karle v. Railroad*,
55 Mo. 482; *Marshall v. Ins. Co.*, 43 Mo. 586; *Hotel Co.
v. Sauer*, 65 Mo. 286; 1 Chitty Pl. [16 Ed.] top p.
252, bottom p. 325; *Suddington v. Shearer*, 20 Pickering,
477; *Jerome v. Whitney*, 7 Johnson, 321; *Comr. v.
Brevard*, 1 Brevard, 11; *Compf v. Morrell*, 111 Ind.
370; *Calvo v. Davies*, 73 N. Y. 211. (5) Instructions
numbers 2, 3 and 4 of defendant's refused instructions
should have been given. They properly withdrew from
the consideration of the jury those sections of the ordi-
nance pleaded, which it was not even pretended had
any causal efficacy in producing plaintiff's injuries. In
reaching a verdict the jury had a right to consider all
evidence admitted and not withdrawn. They may have
regarded these sections as very material in determining
defendant's liability. (6) The court erred in the admis-
sion of testimony against defendant's objections : *First,*
in permitting the plaintiff to state whether he was
notified that the cars were going to move. There was

no legal duty to so notify plaintiff, nor were there any facts and circumstances proven which created such a duty. It was not alleged in the petition that any servant of the defendant saw or knew that plaintiff was in the act of crossing between the cars, but, upon the contrary, plaintiff's testimony proves most conclusively that no servant of the railway company was within his view.

*S. P. Galt* for respondent.

(1) Plaintiff's instruction number 3 is the law. Contributory negligence is an affirmative defense, and must be pleaded by defendant to be available. *O'Connor v. Railroad*, 94 Mo. 155; *Donovan v. Railroad*, 89 Mo. 147; *Thorpe v. Railroad*, 89 Mo. 651; *Petty v. Railroad*, 88 Mo. 306; *How v. Hunt*, 13 West. Rep. 698; *Buesching v. Gaslight Co.*, 73 Mo. 233; *Thompson v. Railroad*, 51 Mo. 190. Defendant relies on *Karle v. Railroad*, 55 Mo. 482; but that question was not in controversy in that case, and the extract quoted from the opinion therein was ill-considered and is not the law. On the trial defendant admitted that the defense of contributory negligence was not in the case and raising the question on appeal is an afterthought. (2) If there was error in the giving of plaintiff's instruction number 3 it would be no ground for reversal, as there was no testimony in the case tending to prove contributory negligence on the part of the plaintiff. It was not negligence for the plaintiff, knowing that the train had obstructed the track for more than five minutes, and knowing that there was no watchman or brakeman there as required by law, to believe that they would not move the train without notice, and act accordingly. *Moberly v. Railroad*, 17 Mo. App. 542; *Kellogg v. Railroad*, 26 Wis. 223; *Johnson v. Railroad*, 77 Mo. 551-2; *Buesching v. Gaslight Co.*, 73 Mo.

232; *Barton v. Springfield*, 110 Mass. 131; *Snow v. Provincetown*, 120 Mass. 580; *Smith v. The City of St. Joseph*, 45 Mo. 449; Thompson on Neg., pp. 1203-1206; Shearman & Redfield on Neg., sec. 4-4. (3) The acts of negligence charged in the petition—the violations of the ordinance, and after so violating it and when so violating it, moving the train without any notice or warning to plaintiff — did cause the injuries, or directly contributed thereto, for, without those acts, the injuries would not have been received. The violations of the ordinance were negligence *per se*. *Boggs v. Railroad*, 18 Mo. App. 278; *Backenstoe v. Railroad*, 23 Mo. App. 156; *Karle v. Railroad*, 55 Mo. 483; *Johnson v. Railroad*, 77 Mo. 552. (4) Defendant's instruction 2 is erroneous, because, *first*, there is no complaint in the petition that the watchman "did not display a red flag," but the complaint in that regard is, that there was no watchman there at all; *second*, the watchman is provided for the protection from moving trains of every person going along the street, including even the person who would pass through the train, who has waited so long as under the law he has any reason to believe that there is any probability of the obstructing train moving; in other words, if a person, in attempting to pass through a train, is using ordinary care and caution (which question is for the jury), then he is not without the protection of the law, and the safeguards provided by the ordinance should be observed for his protection, and it is negligence *per se* not to do it. (5) Defendant's instruction 3 is erroneous. *Moberly v. Railroad*, 17 Mo. App. 542. (6) The defendant's instruction 4 is erroneous, and open to all the objections urged *supra* to instructions 2 and 3, except the last objection *supra*. (7) Plaintiff's instruction number 1 is the law. We might justly have claimed before the jury, by instructions, the rights of recovery upon all the violations of the ordinance set out in the complaint and proven · but

we rested our right in the instruction given solely upon the issue "that then and there at the crossing there was no watchman of the defendant, and said cars were moved without any warning or signal of any kind being given that they were going to move, and the jury further believe that on that account plaintiff was injured." *Karle v. Railroad*, 55 Mo. 483 ; *Boggs v. Railroad*, 18 Mo. App. 278 ; *Johnson v. Railroad*, 77 Mo. 552 ; *Moberly v. Railroad*, 17 Mo. App. 542 ; *Buesching v. Gaslight Co.*, 73 Mo. 232–233.

SHERWOOD, J.—This cause has been transferred to this court under the provisions of section 6 of the constitutional amendment respecting such transfers. The action is for damages caused by injuries to plaintiff.

The petition, after certain recitals as to the defendant being a railroad corporation, sets forth certain ordinances of the city, then states :

"That on the said eighth day of November the defendant, unmindful of its duties in that regard, did, by its servants, carelessly and negligently, and in violation of said sections 1234, 1235, 1237 and 1239, commit the following acts, to-wit :

"It did obstruct a street crossing, to-wit, Montgomery street, of said city, by permitting freight cars, propelled by steam power, to stand thereon longer than five minutes, and did not cause the bell of the engine to be constantly sounded when moving said cars at the place and time aforesaid, and did then and there back said cars, and did not have a man stationed on top of the car at the end of said cars, the same being a train of cars, farthest from the engine, to give danger signals, and did then and there move said train of freight cars without it being well manned with experienced brakemen at their posts, and so stationed as to see the danger signals and hear the signals from the engine, if any should be made; and did, then and there, by its servants in charge thereof, run its cars in said city across

said street, the same being an improved street; as provided in said sections 1234, 1235 and 1237, without any watchman being then and there stationed, as provided for in said sections 1234 and 1235, who might have warned, as it would have been his duty to do, the plaintiff of his danger of being injured, as he then and there was, as hereinafter stated, and defendant did then and there, after having left its cars standing across said street as aforesaid more than five minutes, negligently move the same without any notice or indication to plaintiff that it was going to do so; that by reason of said careless and negligent acts of defendant, the plaintiff, without any fault on his part, was caught between two of said cars, then and there, and had his foot smashed, torn and broken, so that he has since then been unable to work, to his loss and damage on that account of four hundred dollars, and has been, and will be, put to great expense for medical services on account of said injuries to the amount of one hundred dollars; and did suffer great pain of body and mind, and has been permanently maimed and crippled by reason of said injuries to his damage in the sum of two thousand dollars, wherefore plaintiff prays judgment against defendant for the sum of twenty-five hundred dollars and his costs."

The answer was as follows: "Now comes the defendant in the above-entitled cause, by its attorneys, and, for answer to the petition of plaintiff therein filed, admits that it is, and was on the eighth day of November, 1887, a corporation engaged in operating cars and locomotives propelled by steam power in the city of St. Louis and state of Missouri, and as such corporation was duly incorporated under the laws of the state of Missouri. Defendant denies each and every other allegation contained and set forth in plaintiff's said petition. Wherefore, having fully answered, defendant prays to be discharged with its costs."

These ordinances were admitted in evidence over the defendant's objections, but were conceded to be in force at the time the injury occurred.

The testimony of the plaintiff, which was substantially all the testimony offered to show how the injuries occurred, and to sustain his action, was the following:

Edward Hudson, plaintiff, testified as follows: "My name is Edward. Hudson. I live at number 2516 North Broadway, and have lived in the city ten years on the twentieth of June. I know Montgomery street in this city. It is about a block and a half from my place. It has always been called a public street. It is a macadamized, improved public street, and was such on the eighth of last November; was macadamized on both sides of the railroad track. I live south of Montgomery street; know the track of the Wabash Western Railway Company. I live southwest of the track; that is, west of the track and southwest of where it crosses Montgomery street. I am the plaintiff in this case."

The witness was here shown a plat, and, indicating upon it, said: "This line represents Broadway that runs north and south; and the street running across Broadway towards the river represents Montgomery street; I live in the second block south of Montgomery on the east side of Broadway at this point (indicating). This point (indicating) represents where I was hurt on the eighth of November last, that is the fourth track from the west side,. On that day I was working at Schulenburg & Boeckler's mill. The mill was on east side of St. Louis avenue, near the edge of the river east of Broadway and east of the railroad tracks. These lines here indicate the location of the Wabash Western track. In going from my house to the place where I was working, I went out of the back gate in the back yard. Montgomery street is a street that runs east to the river, and the railroad track runs north and south."

Mr. Priest: "I submit it is immaterial where he was working, or which way he was going, or for what

purpose he was going; it is an immaterial fact in this case.''

The court: ''The plaintiff is entitled, of course, to show what he was doing and how he came to be doing it as bearing upon the question of his own exercise of care.''

Mr. Priest: ''There is no plea of contributory negligence in this case.''

The court: ''You do not claim there is any?''

Mr. Priest: ''That is not a question. It is not claimed that he was unlawfully where he was on a public street.''

The court to Mr. Galt: ''It is not very essential for you to prove that he was there lawfully; for they admit that he was there lawfully.''

Mr. Priest: ''I don't admit that what he was attempting to do was lawful.''

Q. (by Mr. Galt): ''I will ask whether you were working that day at Schulenburg & Boeckler's mill?''

Counsel for defendant objected upon the ground that it is immaterial; objection overruled, and exception taken.

A. '' Yes, sir.''

Q. ''State what time you left work to go home to dinner?''

Counsel for defendant objected upon the same ground; objection overruled, and exception taken.

A. '' I left at twelve o'clock sharp from the mill; the whistle blew for twelve o'clock.''

Q. ''About how long did it take to go from the mill to your home to dinner?''

Counsel for defendant objected upon the same ground; objection overruled, and exception taken.

A. '' Between eight and nine minutes, at a slow gait. I had to cross over the Wabash Western track. I got dinner and started back to the mill; left my kitchen at 12:29. Before I got to my back gate the 12:30 whistle blew at Schulenburg & Boeckler's mill.

I walked to the Montgomery street crossing; as I was about getting to the street two laboring men, I don't know who they were, passed by the street going east; they goes right on the train; they get on down and goes on to the house; I suppose I was fully twenty-five steps from there before I got down to the train. When I got down to the train I stopped and waited there about eight minutes. The 12:40 whistle blowed, and I put my hand on the train after standing there eight minutes and undertook to jump over and get to my work to secure my job. I did not want to lose it; I had a family to take care of. It took me two minutes to walk from my home to the Montgomery street crossing where the train was. The minute I jumped on the train and started to cross, either the locomotive must have backed, or the other must have backed on the north track, this coal train. I had my foot between the two pin heads north and south confined by them, and they bruised and skinned my right foot; by that time my left foot was confined, and when it crushed it run it under the draw-head; I was then confined; I hung there a minute or two minutes; at that time the train swung apart that way, then I got it out. I fell over on the east side of the track; I laid there then in the dust. I felt my foot, it was crushed all to pieces. I stayed there fully fifteen minutes. Finally the whistle blew for one o'clock. The coal train drew from Montgomery street. I got two pieces of plank, put them under my arms and hobbled home. It was some minutes after one., I got my wife to run for a doctor and he came. The train extended to North Market street, as far up as St. Louis avenue, as far I could see. There was no engine. I heard no bell rung. There was no watchman there at all. I have not seen a watchman over five dozen times in walking to the mill the last ten years. When I got crippled, the old gentleman who watches there was not there. There was no bell rung. I have lived

right by the railroad. I was very careful in handling myself and taking care of myself."

*Q.* "Tell the jury what your family consists of?"

Counsel for the defendant objects, for the reason that the extent of his family can neither increase nor diminish his physical or mental pain, nor his earning capacity nor loss of service. Objection overruled, and exception taken.

*A.* "I have got three children; one sixteen months old, one three years old, one eight years old, my wife and old mother-in-law. North Market street is the second street south of Montgomery street. This train extends from North Market street south as far north as I could see it. It was a coal train loaded with coal. One box of the train was south of Montgomery street about a box and a half, but the two coal boxes I got crippled in was near Broadway at Montgomery street where I undertook to cross. In the rear of the coal train there was a box car standing loaded with hay and other grain."

*Q.* "Tell the jury whether you were notified that those cars were going to move?"

Objected to by counsel for defendant, on the ground that there is no obligation charged in the petition for the defendant to notify him.

The court: "I understand the petition in this way: They allowed the cars to stand there in excess of the time allowed by law, and he was attempting to cross the train and they pulled on without giving him any warning. If the objection is not on the ground that the question is leading, I think it should be overruled; if it is for that the testimony is not material or competent."

Mr. Priest: "It is for that the testimony is not material or competent, and that the testimony gives no basis for a right to recover under the petition in this case. It is not alleged in the petition that the defendant or its servants had knowledge of the perilous

situation in which he was between the cars, and without such an element in the petition it affords no ground for recovery; our supreme court have expressly so decided."

The court: "I think the objection should be overruled." Defendant then and there excepted to the ruling of the court.

A. "No sir, I was not, gentlemen of the jury; I was not notified; there was no man sent there at all, I want you to understand that plainly. There was no man at the back part of this train; no man there at all."

Mr. Priest: "That is not required unless the train is in motion."

The court: "The objection should be overruled." Defendant then and there excepted to the ruling of the court.

"They did not move none of that train away that I saw; the whistle was blown for one o'clock, the coal train moved across Montgomery street, and I hobbled home. The box cars were left standing below Montgomery street. It is three blocks from Montgomery to North Market street. I came home on two pieces of board, using them as crutches, and my wife went for a doctor, and Dr. Young came. I was confined to my bed nine weeks. I tried to hobble around, but my foot gave me a back-set and I lingered, suffering until the first of January. My foot was broken up right across; stove right across the foot; it was crushed up right across where the toes were attached to the foot. The big toe was torn loose. Since I have been able to get out, I have been trying to hunt something to do. Light jobs, since the first of March; a little house cleaning of whatever kind, I could not stand it any time. Before this time I was never sick or lame in my life. Always was a healthy man; could stand any kind of work. Have worked at Neidringhaus & Co.'s rolling mill, Anglerodt and Second street; commenced in April, 1880, and worked until the twentieth of April, until the mill shut

down, and then went to work for Schulenburg & Boeckler. Since I have got well, I have gone back and tried to do my old work. I worked two days; was not able to stand it; my foot hurt me so I could not use it. If I walked around on it, it swells up so I cannot handle it. On a cloudy day I am in misery; I would rather it would be taken off. Before my injury I was getting a dollar and six bits a day; part of the time—for three-quarters' time—the wages were cut down and then I got a dollar and a half. The train was standing there across Montgomery street when I first left the house going from dinner. There was no bell rung, no bell heard at all.

" There was only one train, a coal train, standing across Montgomery street. Didn't count the cars. They were as far as I could see on the north and about a car and a half south of the street. There was one clear coal car on the south side of Montgomery street, and about half of the other, between the two I got crippled in. The coal car I jumped over to go across was about half the length of it below Montgomery street and one whole car standing below, so that the train over which I attempted to get extended clear across Montgomery street. All the cars were coupled together in this coal train that I saw. I never looked to see whether the coal cars were coupled to the box car or not; it was right up against it. I put my hand on the side of the coal car to raise myself up and put my feet on the draw bar. I put my right foot north of one pin and south of the other, the head of the other pin. When I got my foot in that position the cars slacked back and caught my foot. Just the minute I jumped, the cars closed back. I saw no engine attached to the train at the time, and heard no signal; there must have been an engine or something struck it north, for they would not have closed back except something gave it force. I did not see any engine or hear any noise of any. I do not

know what struck the cars to make them close back at all. They just came back like something struck a bumper. When an engineer backs one box that gives it a start and run it off to a side switch and strikes a train, or a box standing down there. The cars just slacked back, something struck, it closed back like that. The bumpers were pressed together tight and took up the space of the coupling pins."

### RE-DIRECT EXAMINATION.

"The cars could not have backed any further except to have run one of the cars off the end of the track at North Market street, off the track, down on the ground."

Q. "What is there at the end to stop the cars when they back." A. "They generally have a dead man sitting on the end of the track."

The court: "What is that?" A. "There is nothing at the end of the tracks right there by the big factory. Sessinghaus owns a mill there."

Q. (by Mr. Galt): "State what those cars are moved by, hand or locomotives?"

Mr. Priest: "Generally?"

Mr. Galt: "I mean generally, before this time."

Counsel for defendant objects on the ground of incompetency; objection overruled and exception taken.

Q. "What are those cars moved by?" A. "They are moved by steam-power locomotives. In speaking of those cars coming back, it was the whole train closed back, for the cars were attached together."

At the close of the testimony in the cause, the defendant asked and the court refused the following instructions:

"1. That under the pleadings and the evidence in this cause your verdict must be for the defendant.

"2. The court instructs the jury that the provisions of sections 1234 and 1235 of the ordinance read in

evidence, requiring railway companies to station, at intersecting and improved streets, a watchman to display a red flag in the daytime and a red light at night, were not designated for the protection of persons attempting to climb, or climbing between the cars of the train at such intersection, and you are therefore directed to disregard in this case said sections of said ordinance.

"3. Even should the jury believe it to be proven that the defendant's servants stood one of its trains of cars across Montgomery street longer than five minutes, yet that did not authorize the plaintiff to climb between said cars; and the defendant is not liable to the plaintiff in this suit for any injuries which he may have sustained solely by reason of the train so standing across said Montgomery street.

"4. The court instructs the jury that the provisions of section 1239 of the ordinance read in evidence, which requires the bell of engines propelled by steam power to be constantly sounded within the limits of the city of St. Louis when such engine is in motion, and the further provisions of said section that a man shall be stationed on top of a car at the end furthest from the engine of a backing freight train to give danger signals, and the further provisions of said section that no freight train shall at any time be moved within the limits of the city unless it be well manned by experienced brakemen at their posts, so stationed as to see danger signals and hear the signals of the engine, are not designated for the purpose of warning or protecting persons from attempting to climb between trains across improved streets, and the jury therefore are instructed to disregard said provisions of said section 1239."

Which instructions the court refused to give, to which refusal the defendant at the time excepted.

Thereupon the plaintiff asked these instructions :

"1. The court instructs the jury that if they believe from the evidence that defendant did, on the

eighth day of November, 1887, obstruct Montgomery street with cars, propelled by steam power, for a longer period than five minutes, and that said street was a public, improved street of the city of St. Louis, and that plaintiff waited five minutes or more then and there for said cars to move, and said cars not moving plaintiff attempted to get along said street by crossing between the said cars, and while doing so said cars, propelled as aforesaid, moved and caught plaintiff between them and injured him, and they further believe from the evidence that then and there at the crossing there was no watchman of the defendant, and said cars were moved without any warning, or signal of any kind being given that they were going to move, and the jury further believe that on that account plaintiff was injured, then the jury will find their verdict for the plaintiff.

"2. The jury are instructed that by the terms 'improved street,' as used in the instruction, is a street improved on both sides of the railroad track by being macadamized.

"3. The court instructs the jury that defendant has not pleaded, as a defense in this case, contributory negligence on the part of plaintiff, and therefore the question, whether the plaintiff himself was negligent or not, is not before the jury and must not be considered by it.

"4. The court instructs the jury that if they find for plaintiff they will assess his damages at such sum as they believe from the evidence will compensate him for the injuries received by him, if any, at the time and place alleged in the petition, and the jury will take into consideration his pain and suffering caused thereby and the permanency of the injuries, if the jury believe from the evidence they are permanent, and his reasonable medical expenses and loss of labor, if any, resulting from said injuries."

Which instructions the court gave to the jury, to the giving of which instructions in behalf of the plaintiff, the defendant, by its counsel, then and there duly excepted.

Under the instructions of the court the jury found a verdict for plaintiff, and assessed his damages in the sum of twenty-five hundred dollars. The usual motion was made for a new trial and denied, hence the appeal to the St. Louis court of appeals.

I. It is the unquestioned law of this state that contributory negligence is strictly an affirmative defense and, in order to avail a defendant as a matter of *pleading*, it must be affirmatively pleaded. *O'Connor v. Railroad*, 94 Mo. 155, and cas. cit.; *Donovan v. Railroad*, 89 Mo. 147; *Schlereth v. Railroad*, 96 Mo. 509. The contention is, however, made by the defendant that as the petition amongst other things alleged concerning plaintiff, "that by said negligent acts and *without any fault on his part*, he was then and there caught between two of said cars," etc., and the answer denied this averment, that therefore the defense of contributory negligence was raised. This is a mistake. True, the case of *Karle v. Railroad*, 55 Mo. 482, apparently supports this contention, but the utterance there was only *obiter* and should not be regarded as possessing any authoritative value.

II. Besides, under our rulings, there was no manner of necessity for the petition to contain the allegations that the injuries were done to plaintiff "without any fault on his part." This follows as a corollary from the necessity of the defendant setting forth such a defense in his answer; the rule of the code being that " the defendant, by merely answering the allegation in the plaintiff's petition, can try only such questions of fact as are necessary to sustain the plaintiff's case. If he intends to rely upon new matter which goes to defeat or avoid the plaintiff's action, he must set forth in clear and

precise terms each substantive fact intended to be so relied on.   It follows that whenever a defendant intends to rest his defense upon any fact which is not included *in the allegations necessary to the support of the plaintiff's case,* he must set it out according to the statute in ordinary and concise language, else he will be precluded from giving evidence of it upon the trial." *Northrup v. Ins.  Co.,* 47 Mo. 444.   That case was cited and approved in *Kersey v. Garton,* 77 Mo. 645.

III.   Moreover at the trial, the counsel for the defendant expressly disavowed that there was any plea of "*contributory negligence in this case.*"   Surely, after such a pointed disavowal, in the trial court, it is quite too late for him to change front in this court, and claim here that the pleadings raised such an issue; such inconsistent   positions   will   not   be  tolerated. "Fair play is a jewel" in courts of justice as well as elsewhere.   Bigelow   on   Estoppel   [5 Ed.]   673,   717; *Brown v. Bowen,* 90 Mo. 184.

IV.   But while contributory negligence as a matter of defense has to be pleaded in order for a defendant to avail himself of it, by the introduction of evidence to sustain that issue, yet it does not thence follow that if the plaintiff's own testimony shows circumstances of contributory negligence which absolutely defeat his right of action and disprove his own case, that the defendant is not at liberty to take advantage of such testimony though produced by the adversary.   On the contrary, it is well settled in this state as well as elsewhere that such advantage may be taken of the plaintiff's testimony, regardless of whether the special defense be pleaded or not.   *Milburn v. Railroad,* 86 Mo. 104, and cases cited; *Schlereth v. Railroad,* 96 Mo. 509.

When this occurs, it is the duty of the trial court to declare this result to the jury *as a matter of law.* 1 Shearm. & Redf. Neg. [4 Ed.] secs. 56, 112*n*; 2 Rorer on Railroads, pp. 1054, 1055.

V.   This duty, it is claimed, the court should have
performed, and that the first instruction of the defend-
ant in the nature of a demurrer to the evidence should
have been given.   The text-books lay it down as
undoubted law that the act of climbing over stationary
cars without looking to see whether they were attached
to an engine or not  has been held so grossly negligent
as to preclude a recovery for injuries received while
making such  attempt.  1  Thompson  on  Neg.  429;
2 Rorer on Railroads, 1055; Beach on Contrib. Neg.,
sec. 72.   And the reported cases take the same view of
the matter.   *Lewis v. Railroad*, 38 Md. 588; *Gahagan
v. Railroad*, 1 Allen, 187; *Railroad v. Pinchin*, 31 Am.
& Eng. R. R. Cases, 428; *Railroad v. Dewey*, 26 Ill. 255.

The circumstances of *Lewis'* *case* very much resem-
ble those of the case at bar; there, having seen five or six
persons get on the platform of a stationary train of
freight cars, and pass safely over, Lewis, without look-
ing or enquiring whether an engine was attached to such
train, made a similar attempt.   While in the act of
pulling himself up by the handle attached to the car,
with one foot on the platform and the other hanging
down, the train suddenly moved and his leg was caught
and crushed between the two cars, and, in an action
by him against the railroad company to recover dama-
ges for the injury, it was held that the act of the
plaintiff was such carelessness as amounted in law to
contributory negligence and disentitled him to recover,
ROBINSON, J., saying:  "But it was also contended
that the plaintiff is not prevented from recovering, if
the defendant, by the exercise of ordinary care, might
have avoided the consequences of the plaintiff's negli-
gence.   An action, it is true, will lie in some cases,
where there has been negligence on both sides, but in
such cases it must appear that the defendant, by a
proper degree of caution, might have avoided the *conse-
quences* of the *plaintiff's* negligence, or that the latter

could not, by ordinary care and prudence, have avoided the consequences of the defendant's negligence. '*This, however, implies time for one party to become aware of the conduct and situation of the other, for neither could be required to anticipate the other's negligence. Northern Central Ry. Co. v. State to use of Geis*, 31 Md. 366.'      *      *      *

"Where, however, there is no opportunity for one party to become aware of the negligence of the other, and the injury is occasioned by the *concurrent and co-operating negligence of both*, it is well settled that no action will lie.   In the case before us, if it be conceded there was negligence on the part of the defendant in the use of the engine at the time of the injury, it is equally clear there was concurrent negligence on the part of the plaintiff in attempting to get on the platform of the car, and, although the crossing was temporarily blocked, it cannot be imputed as negligence to the agents of the defendant, that they did not anticipate such reckless-ness on the part of the plaintiff.   After the attempt was made to get on the cars, it was impossible for the defendant to have avoided the injury by the exercise of ordinary care, because there was no interval of time during which the agents of the latter could become aware of the danger to which the plaintiff was exposed.

"Then on the other hand, so far as regards the *prior acts of negligence* of the defendant, such as using an engine on the track in the city, and blocking the crossing, in a manner prohibited by the city ordinances, it is very clear, that *such acts of negligence* did not exempt the plaintiff from the use of ordinary care in order to avoid the *consequences of the defendant's neg-ligence*.   The fact that a train of cars is unlawfully blocking a crossing is no reason why a person should throw himself under the wheels, or recklessly expose himself to danger.   He is bound, notwithstanding such acts of negligence, to exercise proper care and prudence,

and, if he fails to do so, he cannot hold another responsible for an injury which may be fairly traced to his own negligence."

In *Pinchin's case*, it is said : " In this case, the risk of passing between a train of cars likely to get under way at any moment was such as no one could assume without being guilty of negligence. This is one of the cases where it must be declared, as a matter of law, that the risk is so great that no one who has a knowledge of the danger has a right to assume it."

There are other cases reported where the persons injured in somewhat similar circumstances were *infants*, and the rulings there made are largely based on this fact. *Railroad v. Fitzpatrick*, 35 Md. 32; *McMahon v. Railroad*, 39 Md. 438; *Ranch v. Lloyd*, 31 Pa. St. 358.

The negligence of the plaintiff is more conspicuous than in any of the cases cited in regard to *adults*, because not only did he attempt to make a crossing which was dangerous in and of itself; but he placed one foot on the draw-bar of one car and the other foot on the draw-bar of the other car, so that each foot was just behind each of the coupling pins of the two connecting cars so that the *slightest oscillation* of either of the trains there backed against each other would in an instant convert the draw-bars and coupling pins into an *improvised trap*, which would seize, and did seize and crush his foot. If the plaintiff, with full knowledge of its existence, had deliberately placed his foot on the wire which fires a spring gun, his temerity and his danger would scarcely have been greater. If such conduct does not constitute contributory negligence, how shall it be christened, and what shall be its baptismal name? It is no answer to this to say that the defendant was guilty of reprehensible conduct in obstructing the street with its cars beyond the time allowed by ordinance. Section 1240 provides a severe penalty for such conduct; but if

it did not this would furnish no excuse for the act of the plaintiff.

"A party is not to cast himself upon an obstruction, which has been made by the fault of another, and avail himself of it, if he does not himself use common and ordinary caution to be in the right. * * * One person being in fault will not dispense with another's using ordinary care for himself." *Butterfield v. Forrester*, 11 East, 60.

VI. Again, admitting the negligence of the defendant in failing to observe the requirements of the ordinance, in relation to allowing its train of cars to remain stationary for more than five minutes, still it does not appear *that negligence* was the proximate cause of the injury to plaintiff, and, unless this is the case, no right of recovery exists. This familiar view is well-expressed in a text-book from which quotation has already been made. " We now come to the most important and difficult part of the general definition of a right of action upon negligence—the connection between the negligent act or omission and the damage. No action can be maintained upon an act of negligence, unless the breach of duty has been the cause of the damage. The fact that the defendant has been guilty of negligence, followed by an accident, does not make him liable for the resulting injury, unless that was occasioned by the negligence. The connection of cause and effect must be established. And the defendant's *breach of duty*, and not merely his *act*, must be the cause of the plaintiff's damage. The defendant's negligence may put a temptation in the way of another person to commit a wrongful act, by which the plaintiff is injured; and yet the defendant's negligence may be in no sense the cause of the injury."

"The breach of duty, upon which an action is brought, must be not only the cause, but the *proximate cause*, of the damage to the plaintiff. We adhere to

this old form of words, because, while it may not have originally meant what is now intended it is not immovably identified with any other meaning, and is the form which has been so long in use that its rejection would make nearly all reported cases on the question involved unintelligible.   The proximate cause of an event must be understood to be that which, in a natural and continuous sequence, unbroken by any new cause, produces that event, and without which that event would not have occurred.   Proximity in point of time or space, however, is no part of the definition.   That is of no importance except as it may afford evidence for or against proximity of causation.   That is the proximate cause, which is most proximate in the order of responsible causation."

" It is not essential to this defense that the plaintiff should have been, in any degree, the cause of the act by which he was injured.   It is enough to defeat him, if the injury might have been avoided by his exercise of ordinary care.   The question to be determined in every case is not whether the plaintiff's negligence *caused*, but whether it *contributed* to, the injury of which he complains,   This it may do by exposing him to the risk of injury, quite as effectually as if he committed the very act which injured him.   Neither is it necessary that the plaintiff's negligence should have contributed to the injury in any greater degree than the negligence of the defendant."   1 Shearman & Redfield on Neg., secs. 25, 26 and 96.

In the light of these authorities there seems no room to question that the judgment should be reversed, and it is so ordered.   RAY, C. J., and BRACE, J., concur; BLACK and BARCLAY, JJ., dissent.