THE CHICAGO, BURLINGTON AND QUINCY RAILROAD COMPANY, Appellant, *v.* NANCY M. DEWEY, Administratrix of Cassius B. Dewey, deceased, Appellee.

### APPEAL FROM KANE.

To authorize a recovery for injuries done by a railroad company, it is not enough to show the company guilty of negligence, but it must appear that the injured party was not also negligent and blameable. Each party must employ all reasonable means to foresee and prevent injury.

If the negligence of one party is only slight, and that of the other appears gross, a recovery may be had.

Where a person of mature years knew a freight train was standing ready to move between himself and the passenger train, and that his passing in the night time through the freight train might not be seen by those managing it, nor they notified of his design to pass, should he attempt to pass and be injured, it would amount to such negligence on his part as to defeat a recovery. It would be otherwise, had a child or person of less than ordinary mind so conducted.

CASSIUS B. DEWEY, the husband of the appellee, had been to Princeton, in Bureau county, Illinois, on business, went to the depot of the appellants at Princeton, to take passage on their

cars to Mendota, in LaSalle county, Illinois, where he was then living. At that time, the custom of the appellants in operating their road (the Chicago, Burlington and Quincy,) was to have the night freight train arrive at the station, some ten minutes after twelve o'clock A. M., and the passenger train fifteen or twenty minutes later.

The freight train, on the night of the accident, as it was its custom to do, on arriving at that station, switched off from the main track on to the first switch track lying south of the main track, leaving the main track clear for the passenger train; it then ran up to the east tank, took in water, cleaned out the ash-pan, and stopped at the tank till the coming of the passenger train, and on the appearing of that train and its sounding its whistle, the freight train moved up some eighty or one hundred feet to take on wood; this it did while the passenger train was coming up and taking in water at the east tank, discharging and taking on passengers, so as to be ready to move and follow on after the passenger train, when it started. There are four tracks at the Princeton depot, to wit, the main track and three switch tracks, all of the switch tracks lying south of the main track; and there are two water tanks, one at the east end of the switches, and the other at the west end. The tanks stand between the main track and first switch track; the new passenger house (the foundation being laid at the time of the accident,) stands about half way between the two tanks; these tanks are some twenty rods apart. The town or city of Princeton lies all south of the tracks, and about one mile from it. The main streets leading from the depot to the town of Princeton, and usually taken by passengers in coming to and returning from the depot, are either Main street or Pleasant street. Main street lies east of and crosses the tracks east of the east water tank, about one hundred feet; Pleasant street crosses them near the new passenger house; these streets are three hundred or more feet apart. The freight house of the appellants is situated between these two streets about midway, and just south of all the switch tracks. In this building, at that time, was kept the ticket office of the company. This station is one of the most important on the line of the appellant's road, at which it receives and discharges a good many passengers, and does a heavy freight business. At night there are two lights kept burning, one in the ticket office and one at the west switch. The watchman has charge of the station at night; he sees to the switching of trains, attending to checking baggage and the ticket office, and assists the engineer and fireman of freight trains in taking water. The freight train was some twenty or twenty-five minutes ahead of time on the night of the accident. The

watchman, on the approach of the freight train, was in the habit of locking up the ticket office and going to the west switch, and setting it so as to allow the freight train to pass from the main track to the first switch track, and after it had passed it, to put it in its proper place for the passenger train, which kept on the main track, and go up to the east tank and assist in taking water ; he did so this night, and remained with the fireman and engineer till they moved up to take wood, and then jumped off from the tender as they were moving, on the south side of the train, and went to the ticket office.

The freight train did not move from the water tank till after the passenger train had got in sight, and gave its signal whistle, (as was its custom)—the passenger train was on time. The deceased, Cassius B. Dewey, was attempting to pass through the freight train at the time it started up from the water tank to take wood, a little west of the middle of the train, in order to get to and take the passenger train then coming up from the west, to go to Mendota, a station on the line of appellant's road about twenty-two miles east of this station, and got caught between the bumpers or dead timbers which are between the cars at their coupling, and was so badly injured that he died from its effects within one and a half hours thereafter. He was first seen and found on the north side of the freight train, consequently must have been nearly through when the freight train moved up, and he was caught. He was found near the west end of the foundation of the new passenger building. The engine of the passenger train stopped at the east water tank, and the train all being west of it at the time. The passenger train was made up of a baggage car and from two to three passenger cars. The passenger train usually stopped about five minutes at this station. Its time of arriving at this station was thirty-five minutes past twelve o'clock A. M. The deceased was taken to the east water tank, put in there, that being the nearest and best place the company had, and remained there till he died. The east tank is a little west and north of the ticket office, between the first switch track and the main track ; the last mentioned track being north of the switch tracks. The freight train after it came up, always laid on this switch track till after the passenger train came up and left, and it lay between the place where the passenger train stopped, and took on and discharged passengers, and the ticket office of the company, and also the town.

Dewey was a young man, about twenty-six years of age, and had a wife and two children. His wife was about twenty-two years old, and his children were two and four years old. He was poor, and they depended on his labor for their maintenance.

He was a grave-stone cutter and letterer, a good workman; also a good musician, and a man of good habits.

This suit was brought under the statute by the appellee, the widow of the deceased, in her representative capacity, as administratrix, and resulted in a verdict for the appellee in the sum of $5,000; and the judge before whom the case was tried refusing to grant a new trial in the case, an appeal was prayed and allowed.

WALKER, VAN ARMAN & DEXTER, for Appellant.

J. H. MAYBORNE, for Appellee.

WALKER, J.   We only deem it necessary in this case, to examine the question whether the husband of appellee was guilty of such gross negligence as relieves the company from liability for his death.   To authorize a recovery, it is not enough to simply show that the company were guilty of negligence, but it should also appear that deceased was not also guilty of negligence in some degree comparable to that of the company inflicting the injury.   Each party is bound, whilst pursuing their legal business, to exercise a due regard for the rights of others.   And when each is equally at fault, and both parties negligent, the injured party has no right to recover for an injury he has thus contributed to produce.   Each party must employ all reasonable means to foresee and prevent injury.   Where the party receiving the injury has acted with even a slight degree of negligence contributing to produce the injury, to recover, he must show that the other party has been guilty of gross negligence.

Whilst the party upon whom the injury is inflicted must use all reasonable care, he is not held to the highest degree of precaution of which the human mind is capable.   Nor to recover, need he be wholly free from negligence, if the other party has been culpable.

Whilst we can have do doubt that the agents of the road were guilty of negligence in stopping their freight train on the side track, between the ticket office and the passenger train, at the time the latter was receiving passengers, the deceased was bound to use reasonable efforts to escape injury.   The company having placed the freight train between the ticket office and the passenger train, should have opened the former so as to afford an easy and safe passage to and from the passenger cars.   In that position all persons wishing to pass must have gone between or around the cars.   To pass through was hazardous, to go around a lengthy train very inconvenient.   And when placed in that

position, the imprudent or reckless might be induced to pass through and become injured.

The deceased knew that an engine was attached, with steam up, liable to move at any moment. It was in the night, when the engineer or conductor would not be likely to see or know of his effort to pass between the cars. He gave no notice of his intention to pass through, and these officers had the right to suppose a prudent or reasonable person would not attempt to pass at the time and under the circumstances. And the evidence seems to show that the bell was rung, and the usual notice thus given, before the train was moved. We are, from all these facts, of the opinion that the deceased was guilty of gross negligence in attempting to pass between the cars when in motion, or when on the point of moving. There can hardly be a doubt but that any reasonably prudent and careful person would have gone around the train, or would have waited until it passed. His conduct, we think, contributed more largely to his death than the negligence of the company. Had he used ordinary prudence, the occurrence would not have taken place. And whilst the company were guilty of such negligence as would have rendered them liable for injury to a child, or a person of less than ordinary mind, yet the deceased being an adult, must be presumed to be endowed with sufficient reason to enable him to exercise ordinary prudence. Having failed to do so, the company cannot be held liable for the injury.

The judgment of the court below must be reversed, and the cause remanded.

*Judgment reversed.*