ORRIN MAGOON

v.

BOSTON & MAINE RD. CO. ET AL.

MAY TERM, 1894.

*Contributory negligence. Passing between stationary cars.
Exception to argument of counsel.*

1.  One who attempts to pass between freight cars by climbing
    over the buffers is guilty, as a matter of law, of contribu-
    tory negligence, although the cars have been unnecessarily
    left standing across a public highway for a long time, and
    although no engine is attached or in sight.

2.  *Held*, that there was no evidence tending to show that the
    servants of the defendant in charge of the train knew or
    ought to have known the perilous position of the plaintiff
    in time to have prevented the injury.

3.  That the defendant failed to blow the whistle, or ring the
    bell, or give some other warning of its intention to move
    the cars, did not excuse the plaintiff from due diligence
    on his own part.

4.  If counsel transcends the right of argument it is the duty of
    the trial court to stop him; and if it omits to do so, that is
    tantamount to a ruling that the remarks are warranted, to
    which an exception will lie, without in terms asking and
    obtaining such ruling.

5.  *Held*, that the judgment should be reversed upon the excep-
    tion taken to the argument of plaintiff's counsel.

Case for personal injuries. Plea, the general issue.
Trial by jury at the February term, 1894, Orleans county,

Rowell, J., presiding. Verdict and judgment for the plaintiff. The defendant excepts.

The plaintiff was injured while attempting to pass over the buffers and draw bars between two freight cars standing upon a highway crossing in the village of Newport. He testified that the cars were standing there when he first came in sight of the crossing on his way down the street; that he stood beside them for some fifteen minutes before attempting to pass through; that he saw no employee of the defendant in charge of said cars, and neither saw nor heard any engine during all the time that he stood there; that both ends of the train, which consisted of some eight or ten cars, were visible, and that he could see a considerable distance down the track upon which the cars stood towards the south, but owing to a curve could not see a great way towards the north; that another person passed between the cars, and that he, being desirous to pursue his way, stepped back so that he might have a view of the track to the north as well as the south; that from the position in which he was standing he could see up the track a considerable distance, and that he neither saw nor heard any engine, and thereupon attempted to pass over the draw bars.

The remaining facts and the exceptions taken by the defendant sufficiently appear in the opinion.

*Di·kcrn:an & Young* for the defendant.

The plaintiff was guilty of contributory negligence in attempting to pass between the cars. He was familiar with this crossing; knew that cars were frequently left standing upon it, but that they were always finally moved away. The fact that these cars had been standing there a long time made it all the more probable that they would be moved. *Indiana, Bloomington, etc., Rd. Co.* v. *Hammock*, 32 Am. & Eng. R. Cas. 129; *Renneker* v. *So. Car. Ry. Co.*, 20 S. C. 218, (18 E. & A. R. Cas. 149); *Simms et al.* v. *So.*

*Ga. Ry. Co.*, 30 A. & E. Ry. Cas. 571–573; *Winn* v. *Lowell*, 1 Allen 177; *Int. & G. N. Rd. Co.* v. *Garcia*, 42 Am. & Eng. R. Cas. 121; *Artusy et al.* v. *Mo. Pac. Rd. Co.*, 37 Am. & Eng. R. Cas. 288; *Zimmermon* v. *H. & St. J. Rd. Co.*, 71 Mo. 476, (2 Am. & Eng. R. Cas. 191); *Nichols, Admr.*, v. *L. & N. Rd. Co.*, 34 Am. & Eng. R. Cas. 37 and note; *Andrews* v. *Central Rd. Co.*, 45 A. & E. R. Cas. 171; *Lake Shore and Michigan Southern Rd. Co.* v. *Pinchin*, 112 Ind. 592, (35 A. & E. R. Cas. 383); *Dahlstrom* v. *St. Louis Rd. Co.*, 35 A. & E. R. Cas. 389; *Howard* v. *Kansas City R.*, etc., *Co.*, 37 A. & E. R. Cas. 552; *Memphis & Ch. Rd.* v. *Copeland*, 61 Al. 376; *Stillson* v. *Hannibal*, etc., *Rd. Co.*, 67 Mo. 671; *O'Mara* v. *Canal Co.*, 18 Hun. 192; *Central Rd. Co.* v. *Dixon*, 42 Ga. 327; *Union Pac. Rd. Co.* v. *Adams*, 33 Kan. 427, (19 A. & E. R. Cas. 376); *Renner* v. *Northern Pac. Rd. Co.*, 46 Fed. Rep. 344; *Bird* v. *Flint & P. M. R. Co.*, 86 Mich. 79; *Corcoran* v. *St. Louis, I. M. & S. R. Co.*, 105 Mo. 399, (49 A. & E. R. Cas. 387); *Atchison T. & S. R. Co.* v. *Plaskett*, 26 Pac. Rep. 401; *Bean* v. *Employers' Liability Assurance Co.*, 50 Mo. App. 459; *Chicago, Rock Island & Pac. Rd. Co.* v. *Hamilton Hanson*, 95 U. S. 697; *Louisville & Nashville Rd. Co.* v. *Crawford*, 44 A. & E. R. Cas. 568–571; *Cleary* v. *Philadelphia & R. Co.*, 140 Pa. St. 19.

There was no question for the jury, and the court should have directed a verdict. *Latremouille* v. *B. & R. Rd. Co.*, 63 Vt. 336; *Worthington* v. *Cent. Vt. Rd. Co.*, 64 Vt. 107; *Clark* v. *Rhode Island Elec. Lt. Co.*, 16 R. I. 465; *New Jersey Ex. Co.* v. *Nichols*, 33 N. J. L. 424; *Granger* v. *Boston & Albany*, 146 Mass. 276.

The argument of plaintiff's counsel was unwarranted, and furnishes matter of exception. *Perkins* v. *Burley*, 6 N. E. R. 818; *Bullard* v. *Boston & Maine Rd. Co.*, 64 N. H. 27; *Brown* v. *Swinneford*, 44 Wis. 282; *Coble* v. *Coble*,

79 N. C. 589; *Cleveland Paper Co.* v. *Banks,* 15 Neb. 20, (48 Am. Rep. 334).

Unwarranted statements in argument are *prima facie* prejudicial, and an exception will lie without any ruling of the court thereon. *Martin* v. *State,* 63 Miss. 505, (56 Am. Rep. 812); *Hillard* v. *Beattie,* 59 N. H. 462; *Tucker* v. *Henniker,* 41 N. H. 317; *Cross* v. *Grant,* 62 N. H. 676.

*C. A. Prouty* for the plaintiff.

The defendant had left its cars standing upon this highway crossing unnecessarily, and in violation of law. People had congregated at that point for the purpose of passing over the crossing, and some persons had already passed between the cars. Under these circumstances it was the duty of the defendant to give some warning to the public of its intention to move its cars. Not having done so, it is liable. *Burger* v. *Rd. Co.,* 112 Mo. 238; *Penn. Rd. Co.* v. *Kelley,* 31 Pa. St. 372; *Wilder* v. *Stanley,* 65 Vt. 145; *Grimes* v. *Louisville, etc., Rd. Co.,* 3 Ind. App. 573; *Young* v. *Detroit, etc., Rd. Co.,* 56 Mich. 430; *Denver, etc.,* v. *Robbins,* 30 Pac. Rep. 261; *Philadelphia, etc., Rd. Co.* v. *Layer,* 112 Pa. St. 414; *McMahon* v. *Northern Cent. Rd. Co.,* 39 Md. 438.

A traveler on the highway who finds an obstruction therein may surmount it in whatever manner he best can, and it does not lie in the mouth of the one who has created the obstruction to say that he shall not incur whatever hazard may be necessary to overcome the same. *Mahoney* v. *Metropolitan Rd. Co.,* 104 Mass. 73; *Smith* v. *Railroad Co.,* 84 Ga. 198; *Adams* v. *Iron Cliffs Co.,* 78 Mich. 271; *Young* v. *Detroit, etc., Rd. Co.,* 56 Mich. 430.

No engine was attached to this train. In all the time the plaintiff stood there, there was nothing to indicate to him that the defendant contemplated moving these cars. Before he attempted to pass through, the plaintiff endeavored to

satisfy himself that no engine was in the vicinity.   Whether he ought to have  seen the engine, which was in fact concealed from view by the two cars towards  the  north, was a question for the  jury.   In all the cases cited by the defendant, in which an attempt to pass between  freight  cars  has been held contributory neglect, an engine was  attached  to the  train, and the  decision  in  every case is distinctly put upon that ground.

It has been frequently held that an attempt to pass ·between two cars is  not  contributory negligence where  the plaintiff has a right to apprehend that he will not be injured in consequence.   *Smith* v.  *Railroad  Co.*, 84  Ga.  198 ; *Balt. & Ohio Rd. Co.* v. *Fitzpatrick*, 35 Md.  32 ;  *Klanowski* v. *Grand  Trunk  Ry.  Co.*, 57  Mich.  525,  528 ;  2 Sher. & Red., Neg., s.  479 ; *Renner* v. *Northern  Pac.  Ry. Co.*, 46  Fed. Rep.  344 ;   *Chicago, etc., Rd. Co.* v. *Sykes*, 96  Ill.  162 ;  *Nichols* v.  *W. O. & W. Rd. Co.*, 83 Va. 99, 104 ;  *Wilkins* v.  *St.  Louis, etc., Rd.  Co.*, 101  Mo.  93 ; *Adams* v. *Iron  Cliffs Co.*, 78 Mich. 271 ;  *Greany* v. *Long Island  Rd. Co.*, 101  N. Y.  419 ;  *Meek* v. *Penn. Rd. Co.*, 38 Ohio St. 632.

The employes of the defendant ought to  have  observed the perilous position of the plaintiff while attempting to pass between the cars, and to have  refrained  from  moving  the cars while he was in that position.  *Henderson* v. *St. Paul, etc., Rd. Co.*, 55 N. W. Rep. 53 ; *Andrews* v. *Central Rd. Co.*, 86 Ga.  192 ;  *Lewis* v. *Balt. & Ohio Rd. Co.*, 38 Md. 588 ;  *Balt. & Ohio Rd. Co.* v. *Trainer*, 33 Md. 542 ;  *Inland & Seaboard Coasting Co.* v. *Tolson*, 139 U. S. 551.

A civil case has seldom, if  ever, been reversed by reason of  argument of  counsel, unless counsel has stated as a fact, within his own knowledge, some  matter which was  not  in evidence,  and which was material to  the  consideration  of the case.   Plaintiff's counsel in the  case  at bar  made  no such statement.   *Rea* v. *Harrington*, 58 Vt.  181 ;  *Proctor*

v. *De Camp*, 83 Ind. 559 ; *Shuler* v. *State*, 105 Ind. 289 ; *Battishill* v. *Humphreys*, 64 Mich. 514, 519.

TYLER, J.    This suit was brought to recover damages for injuries sustained by the plaintiff by reason of the alleged negligence of the defendant.

The plaintiff's evidence tended to show that the defendant was guilty of negligence ; that it might have pushed the cars further south so as to have cleared the crossing instead of leaving them upon it; that it thereby violated Act No. 39, Laws of 1882, and rendered itself liable to a fine of from five dollars to twenty dollars.

It further tended to show that this highway crossing had existed in substantially the same manner for twenty years or more, and that during a considerable part of that time, in going to and from his work, the plaintiff had passed it daily ; that he knew that it was within the limits of the B. & M. freight car yard; that freight trains were made up on it ; that in passing he frequently found cars upon the crossing and had to wait for their removal, the time varying from five to twenty-five minutes ; that on this occasion eight or ten cars stood upon the crossing—three or four south and the others north of it when he reached it—and had stood there, he thought, after he came in sight of it, about fifteen minutes when he attempted to pass over the couplings ; that as he stood beside these cars he could see quite a distance south, and that no other cars stood on that track ; that the north end of the obstructing cars cut off his view of the track in that direction ; that no engine was attached to these cars and none was in sight; that before attempting to pass he stepped back from the cars some fifteen or twenty feet to see if an engine was in sight and saw none ; that an engine of the B. & M., with two cars attached in such a way that the cars were between the crossing and the engine, stood north of the crossing at or near the water tank ; that he

then stepped forward to the cars, seized hold of the irons (ladders) on the ends of two cars and threw his feet upon the heads of the draw bars, but was unable to throw his body up; that he was engaged in a lively struggle for about half a minute, as he estimated the time, when the engine and two cars ran down from the north and coupled with the obstructing cars, and pushed them south off the crossing; that in his attempts to raise himself his left foot slipped onto the coupling links, so that when the cars came together his foot was crushed between the two draw bar heads; that two or three persons passed between the cars before he made the attempt; that no bell rang and no whistle sounded while he was waiting; that there was no necessity for his crossing before the cars should be removed other than that he expected his daughter was, as usual, waiting for him with a carriage on the east side of the tracks, though she was not in fact waiting. The plaintiff was sixty-five years old, and weighed from one hundred and eighty to one hundred and ninety pounds. It did not appear that any official or employe of the defendant knew that other persons had crossed or of the plaintiff's attempt.

Although upon the plaintiff's evidence no employes of the defendant were in charge of the cars and there were no indications that they were about to move, he must have known that they would soon be moved from the crossing; that if they stood there as long a time as he thought they had, they were liable to be moved at any moment. It is apparent that the people who had collected at the crossing on both sides of the tracks momentarily expected the cars to be moved, as was the custom. Though the plaintiff could see that no engine was attached, he could not assure himself that one was not in a position to run down and be attached in less time than he would require to mount and cross over the couplings. It does not appear that he inquired of any person whether or not the cars were about to

move, or that he used any diligence to ascertain, except to step back a few feet so that he could the better see the track, which he says he could see but a short distance. The engine was in fact close at hand, as the event proved.

It is a general rule that though the defendant may have been guilty of negligence and of a violation of law, the plaintiff cannot recover if his own negligence contributed to the happening of the accident. . Beach on Contrib. Neg., s. 64, says :

"No failure on the part of the railroad company to do its duty will excuse anyone from using the senses of sight and hearing upon approaching a railway crossing ; and whenever the due use of either sense would have enabled the injured person to escape the danger, the injury is conclusive evidence of negligence without any reference to the railroad company's failure to perform its duty."

This court has repeatedly held that where a party claims to have suffered damage by the carelessness or negligence of another, it is a rule nearly if not entirely universal that if the negligence or carelessness of the person injured contributed in any material degree to the production of the injury complained of, he cannot recover ; that if the injury is in whole or in part owing to the plaintiff's want of ordinary care or prudence, he cannot recover. Rob. Dig. 480, Pl. 14, 15.

The defendant claimed in the court below that the case made by the plaintiff showed him to have been guilty of contributory negligence, so that in law he was not entitled to a verdict. Ordinarily, under the long settled rule in this state, this is a question of fact for the jury, and in this case there was no error in the refusal of the court to direct a verdict for the defendant, unless the case fell under the exception to the rule. *Rogers* v. *Swanton,* 54 Vt. 585 ; *Fassett* v. *Roxbury,* 55 Vt. 552. The exception to the general rule is clearly stated by Ross, C. J., in *Latremouille* v. *B. & R. Co.,* 63 Vt. 336, as follows :

"It only becomes a question of law purely, when conceding the facts to be undisputed, or to be such as the testimony most favorable to the plaintiff has any reasonable tendency to establish, they will not warrant a legal inference, nor if the inference be of a fact, have a reasonable tendency to support such inference of fact, necessary to give the plaintiff a verdict."

In that case the plaintiff's intestate was a car inspector and repairer of the defendant and went under a standing car to repair it, knowing that a train was liable at any moment to back down upon it. A train did back down and he received fatal injuries; *held*, that the danger was obvious, and that there could be no recovery.

In *Worthington* v. *Cen. Vt. R. Co.*, 64 Vt. 107, Rowell, J., stated the rule concisely as follows :

"When the standard of negligence is not prescribed, and there is a combination of facts and circumstances relied upon to show negligence, the question becomes one of law only when those facts and circumstances are so decisive one way or the other as to leave no reasonable doubt about it—no room for opposing inferences. This is clearly shown by the adjudged cases."

In that case the plaintiff, a passenger, was unnecessarily standing on the steps or platform of a rapidly moving train. See *Germond's Admr.* v. *Cen. Vt. R. Co.*, 65 Vt. 126.

It has often been held that it is gross negligence in a traveler to attempt to pass between the cars of a standing train to which an engine is attached, and which he knows, or reasonably ought to know, is ready to move. This is so laid down in the text books. In *Corcoran* v. *Cen., etc., R. Co.*, 105 Mo. 399, it was held that although the plaintiff did not know whether an engine was attached to the cars or not, yet as he did know that one ought to have been attached for the purpose of moving them off the crossing, and that engines were at work in the yard moving trains and switching cars, it was gross negligence in him to attempt to go upon them.

It was said by the court in *Chicago, etc., R. Co.* v. *Houston*, 95 U. S. 697, that it was the duty of the plaintiff when about to cross a railroad track to make use of his senses, as far as there was opportunity, in order to ascertain if there was danger in crossing; some cases say, "vigilant use."

In *Hudson* v. *R. Co.*, 101 Mo. 13, the court held that for a person to climb over stationary cars without looking to see whether or not they were attached to an engine was such gross negligence as precluded a recovery for injuries received in the attempt, and cited 1 Thomp. on Neg. 429; 2 Rorer s. 1055; Beach on Contrib. Neg. s. 72.; *Gahagan* v. *R. Co.*, 1 Allen 187; *R. R. Co.* v. *Dewey*, 26 Ill. 255; *Lewis* v. *R. Co.*, 38 Md. 588; *R. R. Co.* v. *Pinchin*, 112 Ind. 592. In that case the plaintiff placed one foot on the draw bar of one car and the other on the draw bar of the other car, each foot being just behind each of the coupling pins of the two connecting cars, so that, as the court observed, the slightest oscillation of either car would in an instant convert the draw bars and coupling pins into an improvised trap, which would seize and did seize and crush his foot. The court said:

"If such conduct does not constitute contributory negligence, how shall it be christened?     *     *     *     It is no answer to this to say that the defendant was guilty of reprehensible conduct in obstructing the street with its cars beyond the time allowed by the city ordinance."

"A party is not to cast himself upon an obstruction which has been made by the fault of another, and avail himself of it, if he does not himself use common and ordinary care to be in the right.     *     *     *     One person being in fault will not dispense with another's using ordinary care for himself." *Butterfield* v. *Forrester*, 11 East 60.

The facts in *R. R. Co.* v. *Pinchin, supra*, were different from those in the case at bar, but some rules are laid down by the court in that case that are applicable in this, viz.:

"A person who has knowledge that a train of cars is stopping temporarily at a way station on its way to its destination, has no right to assume the risk of passing between the cars. It is a danger so immediate and so great that he must not incur it." * * * "It will not avail the plaintiff that he was not fully aware of his danger, for the plaintiff is bound to know the extent of the danger in cases like this, where the circumstances are known to him, or the hazard is apparent to a reasonably prudent man." * * * "One who attempts to cross between the cars of a train which he knows, or might know by using his natural faculties, is likely to move at any moment, is guilty of negligence." * * * "A man has no right to cast himself upon a known danger when the act subjects him to great peril. If there is a risk apparent or known that will probably result in injury, he must not encounter it."

Numerous cases of the same import are cited in the opinion. In that case the plaintiff attempted to pass between the coupled cars of a freight train that was standing temporarily across a street at a way station. He did not see, but might have seen, that an engine was attached.

In *O'Mara* v. *D. & H. Canal Co.*, 25 N. Y. 192, the train had stood upon a public crossing for some time. The plaintiff could not see whether an engine was attached or not, owing to a curve in the track. He attempted to climb over between the cars, and was injured by the train being suddenly moved; *held*, that he could not recover.

There are numerous reported cases, many of which are noted in the briefs, in which it is held that it is gross negligence in the traveler to attempt to pass between the cars of a moving train; also between the cars of a standing train with an engine attached and steam on ready to move; also where the traveler could not see whether an engine was attached or not. Counsel in their extended researches have found no case precisely like the one at bar in its facts. The one above referred to in 105 Mo. is like it in this respect— that the plaintiff in that case knew that an engine ought to be attached in order to move the cars off the crossing. Other

cases lay down the rule that when the traveler knew or reasonably ought to have known that the cars were liable to be moved at any moment, it is legal negligence in him to attempt to pass between them.

Cases cited by plaintiff's counsel seem to hold a somewhat different doctrine, as

"When a train stands across a public street, without right, a person has a right to walk along the street behind the rear car, and assume that the train will not back without giving notice." *Robinson* v. *R. Co.*, 48 Cal. 409.

In *Klanowski* v. *R. Co.*, 57 Mich. 525, it was held that when the defendant neglected certain statutory duties, made for the benefit of travelers and others, and a person was injured, the defendant would be liable, although the person was guilty of some fault which contributed to the injury complained of; that such fault ought not to be available to the defendant in making defence against its wrongful acts, unless it was wilful or gross so as to be inexcusable. Other cases cited seem to require less care and prudence from the party injured when cars obstruct a public street in violation of law than under other circumstances.

We think the better doctrine is that stated in *Andrews* v. *R. Co.*, 86 Ga. 192. In that case the court said:

\* \* \* "The obstruction was open and visible, and no reason is shown why the plaintiff should not have anticipated that the train might not move at any moment. Yet, without waiting for it to move, applying to have it moved, or attempting to go round it, he voluntarily and without warning anyone of his intention, exposed himself between the cars by climbing upon their platforms adjacent to the bumpers, and was injured."

The court further said:

"Though a standing railway train be an unauthorized obstruction of a public crossing, a person attempting to pass between the cars by climbing over the platform and bumpers, if injured thereby in consequence of a sudden movement of the train cannot recover unless the engineer, conductor,

or some other person having control of the train's movements knew of his attempt to cross, or had notice of his exposure to danger."

The plaintiff knew from experience that the cars had already stood on the crossing a longer time than usual. If the engine and two cars were within the range of his vision, he ought to have seen them. If, as he claimed, he could see but a little distance up the tracks, and the engine and two cars were at or near the water tank and beyond his vision, he had no right to attempt so hazardous an undertaking, for he had no assurance that the engine was not where it could be run down and attached in a moment's time, as was in fact done. As was said by the court in *Lewis* v. *R. Co.*, 38 Md. 588:

"His attempt to cross where he did was simply consulting his own convenience at the risk of his safety."

It was a voluntary contribution of his own negligence to the occurrence of the accident.

The reason for the holdings in the various cases cited by counsel does not rest in the mere fact that an engine is attached to the cars, even when it has steam on and is ready to move, but because the situation is one of danger, the imminency of which the plaintiff, in the exercise of his faculties, might have and should have understood.

If it would have been gross negligence in the plaintiff to have attempted to pass between the cars when an engine was attached with steam on ready to start, it is difficult to see why it was not equally negligent in him to attempt to pass when it was in fact in such a position that it could be attached in a moment.

When the plaintiff rested the defendant moved for a verdict; the motion was denied, and the defendant excepted. To have availed itself of its exception it should have then rested. By proceeding with the trial the motion and exception were waived.

The defendant's evidence tended to show "that all the men, being the engineer, fireman, conductor and two brakemen, in charge of the B. & M. engine and cars, were attending to their respective duties and were in their proper places; that the gateman was in his house attending to his duties, and that none of them saw the plaintiff before he was injured"; that the cars had not obstructed the crossing longer than was necessary, and that only one person crossed over before the plaintiff's attempt.

When the defendant rested and the plaintiff renewed its motion for a verdict, this was the case presented: The defendant's cars were obstructing a public crossing, one much used, especially at that hour of the day; people had congregated on both sides of the cars waiting for them to be moved; one, two, three or four persons had passed over the couplings; the conductor and trainmen were, at the time of the accident, attending to their respective duties, and none of them saw the plaintiff nor were aware of his attempt to cross.

The circumstances required, as has often been declared by other courts in respect to the running and operating of trains in towns and cities, especially on and over streets and other public places therein, that the greatest diligence, watchfulness and care should be observed by those operating them. *Burger* v. *R. Co.*, 112 Mo. 379, s. c. 34 Am. St. 379.

Although none of the defendant's employes saw the plaintiff, his counsel insists that it was a question of fact for the jury whether, in the exercise of that degree of care which, in the circumstances, the law required of them, they ought not to have seen him in his attempt to pass between the cars.

In *I. & S. C. Co.* v. *Tolson*, 139 U. S. 551, the rule of law was recognized that the contributory negligence of the plaintiff would not exonerate the defendant and disentitle

the plaintiff from recovering, "if it be shown that the defendant might, by the exercise of reasonable care and prudence, have avoided the consequences of the plaintiff's negligence."

In that case the court said that the jury might well be of opinion that while there was some negligence on the part of the plaintiff in standing where and as he did, yet that the officers of the boat knew just where and how he stood, and might have avoided injuring him if they had used reasonable care to prevent the steamboat from striking the wharf with unusual and unnecessary violence; that if such were the facts, the defendant's negligence was the proximate, direct, and efficient cause of the injury.

In *Bemis* v. *R. Co.*, 42 Vt. 375, it was held that a railroad company was bound to exercise ordinary care to avoid injury to an animal that was upon the track by the wrongful act of its owner; but in that case it appeared that the engineer, from his position, had a full view of the track for a distance of seventy-five rods ahead of his engine.

In *Corcoran* v. *R. Co.*, *supra*, it is said:

"It is well settled that, notwithstanding the negligence of the defendant, if the plaintiff was also negligent, which the defendant did not know, or was not required to know, at the time, and the negligence of both concurred and co-operated in producing the damage, then the proximate cause of the injury will be attributed to the plaintiff, and there can be no recovery."

In that case the plaintiff, a police officer, was injured while attempting to climb over stationary cars without knowing whether an engine was attached or not, the cars obstructing a public street in violation of a city ordinance. It was not claimed that any employe of the defendant knew of the plaintiff's perilous situation.

In *Rine* v. *R. Co.*, 88 Mo. 392, it was said that if the employes of the company saw the plaintiff in an exposed and dangerous situation in time to have avoided the acci-

dent, then they were bound to use all reasonable diligence to have avoided it; "that the liability of the defendant should be limited to negligence and want of care after the exposed and dangerous position of the plaintiff came to the knowledge of the servants who are charged with the want of care."

In *Corcoran* v. *R. Co.*, *supra*, the court said that the defendant's employes "were not bound to look for the plaintiff where he had no right to be," by which remark was evidently meant that no inference of negligence could be drawn from the mere fact that they did not see him.

In *Andrews* v. *R. Co.*, *supra*, the defendant's liability was limited to the knowledge which the employe in charge of the train had of the plaintiff's attempt to cross and notice of his exposure to danger.

In *Lucas, Admr.*, v. *R. Co.*, 6 Gray 64, the wife of the plaintiff went into a car to assist an aged and infirm relative to a seat, and then left the car after the train moved. In jumping to the platform she was thrown under the wheels and fatally injured. The plaintiff's evidence tended to show that the usual signals for starting the train were not given, and that it started with a sudden jerk. The court said:

\*    \*    \*    "Mrs. Lucas, when the train started and when the jerk occurred, was where she had no right to be. And conduct which the law requires of those who wrongfully bring themselves into an emergency, is not to be measured by that which the law excuses in those who are wrongfully brought into an emergency by others."

Shear. & Red. on Neg., 2d ed., ss. 25 and 36, carry the rule no further than this: That a plaintiff may recover notwithstanding his own negligence, if the defendant became aware of his danger and failed to use ordinary care to avoid injuring him.

In this case the defendant's evidence tended to show that all the defendant's employes who were near the place of the accident were attending to their respective duties. No evi-

dence in the case tended to show the contrary. None of the employes saw the plaintiff attempt to pass between the cars, and there was no evidence that tended to show that they had reason to anticipate that he would attempt so hazardous an enterprise. If those employes had seen or been apprised of the attempt, they would have been legally bound to have used all reasonable efforts to have avoided the accident; but the liability of their employer did not begin until they saw or had notice of the peril, or, in the exercise of the care of a prudent and careful man, they ought to have seen or known of it.

Then, considering the dangerous situation and the opportunity which the defendant's employes had to see the plaintiff and others attempting to cross over, as disclosed by the evidence, was there a question of fact fairly arising upon the evidence, whether the employes ought to have seen the plaintiff, or ought to have noticed that persons had passed over the couplings, or ought to have anticipated that they would attempt it?

The evidence as to the positions occupied by the employes at the time of the accident and what they were severally doing came almost wholly from the defendant's witnesses, and was not conflicting. The conductor stood on the north side of the crossing, east of the cars, attending to the work; a brakeman stood at the north end of the cars, on the east side ready to make the coupling, and did make it when the engine and two cars came down; the engineer and fireman were in their proper places, and a brakeman was on the top of the car next to the engine. No question arises but what each was attending to his duties in respect to backing the engine and two cars down to the crossing, making the coupling and removing the other cars.

Was there any inference to be drawn from the undisputed facts that the defendant's employes were negligent of any

duty they owed the plaintiff ? Was there any room for a difference of opinion among reasonable men as to the inference which might be drawn from those facts? We think not. It should have been held as matter of law that no inference of negligence could be drawn from the fact that they did not see the plaintiff and others in their attempt to pass between the cars.

The evidence was conflicting upon the question whether the bell was rung and the whistle sounded as a warning that the cars were about to be moved. It has often been held that the mere omission of a railroad company to give such signals at crossings will not excuse the traveler from using ordinary care and prudence. In *R. R. Co.* v. *Houston, supra*, plaintiff's wife was fatally injured by a passing train while she was attempting to cross the track at a street crossing. The plaintiff's evidence tended to show that no signal was given as the train approached the crossing. The court said :

"Negligence of the company's employes in these particulars was no excuse for negligence on her part. She was bound to listen and to look before attempting to cross the railroad track, in order to avoid an approaching train, and not to walk carelessly into the place of possible danger. Had she used her senses, she could not have failed both to hear and to see the train which was coming. If she omitted to use them and walked thoughtlessly upon the track, she was guilty of culpable negligence, and so far contributed to her injuries as to deprive her of any right to complain of others. If, using them, she saw the train coming, and yet undertook to cross the track instead of waiting for the train to pass, and was injured, the consequences of her mistake and temerity cannot be cast upon the defendant."

"When by law ringing the bell and sounding the whistle are required in approaching and passing over public crossings, the omission thereof amounts to actual negligence on the part of the company. But such omission and negligence does not render the company liable for injuries received at such crossings unless the omission be the cause thereof or

contribute thereto, without contributory negligence of the injured party.   Negligence in the railroad company in giving the signals, or in omitting signals of any kind, will not excuse plaintiff's omission to be diligent in such use of his own means of avoiding danger; and where, by such use of his senses he might avoid danger, notwithstanding the neglect to give signals or warning, his omission is contributory negligence."   *Rumpel* v. *R. Co.*, 35 Pac. R., 700, citing 2 Rorer, s. 1130;  *R. R. Co.* v. *Copeland,* 61 Ala. 380;  *R. R. Co.* v. *Houston, supra.*

Upon the whole case we think there was no other inference to be drawn from the evidence than that the plaintiff's negligence was the proximate cause of the injury, and therefore, as matter of law, he was not entitled to recover.

The plaintiff's counsel, in his closing argument to the jury, made certain statements which defendant's counsel objected to, and to which exceptions were allowed the defendant.

The exceptions state that "the plaintiff called one George Magoon and had him sworn with his other witnesses at the opening of his case, but did not improve him as a witness before he rested."   After all its other testimony had been introduced, the defendant called said George Magoon to the witness stand and he testified, in answer to the questions of the defendant's counsel, that "he was at work on Lane's block with the plaintiff, and had gone down to the crossing just ahead of the plaintiff; that when he went down the west gate was lowered immediately after he passed, and before the plaintiff passed; that he stood a short time, perhaps a minute or more, beside the cars, and then hurriedly passed over the bunters and between the cars; that as he passed over the space between said gate and the cars he thought he saw two engines above there, but knew that he saw one; that when he stepped between the cars he thought he saw one or two cars standing on the main line next to the passenger depot with an engine above them, and knew he then saw an engine on the main line somewhere

near the water tank, and thought it was backing down towards the highway crossing; and that the bell of one of the engines was ringing, which had something to do with his hurrying through between the cars." The evidence of the plaintiff tended to show that in a previous conversation this witness had stated that the west gate was up; that he stood beside the train for ten minutes before passing between the cars; that he saw an engine, but could not tell whether it was backing down or not. The plaintiff claimed that the testimony of this witness was false in fact, and utterly at variance with the statements which he had made as above, and in consequence of which he had been subpœnaed by the plaintiff. The witness himself testified that he had been subpœnaed by the defendant the day before. In commenting upon this testimony and upon the credibility of the witness, counsel for the plaintiff said:

"He is here on the other side. Let the full panel ask how he got here. He says he was subpœnaed, and that until he took the stand they did not know what he would swear to; that he hadn't talked with Young or Dickerman, hadn't talked with Crane or Alfred, hadn't talked with Folsom."

Mr. Young: "We desire an exception to that statement. The witness said he talked with me at noon."

Mr. Prouty: "If I have misstated the testimony you will correct me; my recollection is that he did not talk with any of these gentlemen."

Here the reporter read from the witness' testimony as follows:

CROSS-EXAMINATION BY MR. PROUTY.

Q. Did you ever talk with anybody on the other side till to-day noon?

A. No, sir, not unless someone was talking it over at different times about the accident.

RE-DIRECT BY MR. YOUNG.

Q. Did you ever talk with Mr. Dickerman or myself or Crane or Alfred about this case until to-day noon?

A.    No, sir.

Q.    Or with Mr. Folsom?

A.    No, sir.

Q.    Or with Mr. Brady, the superintendent of the Canadian Pacific?

A.    Yes, sir; I presume Mr. Brady said something.

Q.    I mean Mr. Brady, the superintendent of the Canadian Pacific railroad.

A.    Oh, no, sir; I don't know him.

Then Mr. Prouty went on to say:

"If that is true, gentlemen, it probably accounts for his testimony. I don't know how much they paid that fellow; but I tell you that when he gave his testimony on the stand he was in the employ of the Boston & Maine company."

Mr. Young: "We desire an exception to that."

The Court: "Take your exception."

Mr. Prouty: "That is, in my opinion. I presume it did not cost them much; that sort of a fellow don't come high; a viper of that sort don't value his services at an extraordinary price. They wanted to know why I did not put him on. I didn't put him onto the stand, because of all the witnesses I talked with about the case he was the only man that couldn't look me in the eye and tell me his story."

Mr. Young: "We desire an exception to that."

Mr. Prouty: "I didn't put him on, because I knew if I put him on he would knife me."

Mr. Young: "We desire an exception to that."

The Court: "Exception allowed."

Mr. Prouty, continuing, said in substance:

"Gentlemen, you have seen this fellow, and you have seen his manner of testifying. You have seen the other witnesses for the plaintiff and their manner of testifying. I appeal to you. He is the only witness of those originally called here by the plaintiff who has not been able to, look you in the eye and tell his story in an honest, straightforward manner."

There was no evidence offered tending to show that said Magoon was paid, given or promised anything for testifying

on behalf of the defendant, or that he was ever in the employ of the defendants or either of them, or that he did not or could not look Mr. Prouty in the eye and tell him his story, any further than the appearance of the witness and his manner of testifying might indicate ; nor did it appear that Mr. Prouty knew that the witness would knife him if he put him on. Mr. Prouty, in his argument, did not give the jury to understand that he had any personal knowledge of the fact that the witness had been paid for his testimony, unless they understood that from what he said as above stated.

The exceptions further show that "the employes of the defendant who were improved as witnesses nearly all testified that both engines were just north of the crossing at the time of the accident and moving towards the crossing, and that the bells upon one or both of the engines were ringing at that time." In commenting upon the idea that these witnesses should be able to remember whether or not the bell was in fact ringing upon that occasion, counsel for the plaintiff said :

"I don't know how many suits in which railroad companies were involved you may have heard tried, but it is a general rule that the bell always rings ; there is no case on record in which the bell did not ring."

Mr. Young :    "We desire an exception to that."

The Court :    "Take your exception."

Mr. Prouty :    "It is the universal rule that the bell always rings. One of the stock questions which a railroad manager asks an applicant for employment is, 'Does the bell ring?' No evidence was offered tending to show anything about bell ringing on any other occasion, or about any claim being made by this or any other railroad company that a bell was rung on any occasion, save the time of this accident."

The tendency of the remarks concerning the witness Magoon was to induce the belief in the minds of the jurors that he had been hired to falsify, either by the defendant or its counsel, and to prejudice the defendant and its case with-

out any warrant therefor so far as is disclosed by the evidence. It was competent for the plaintiff to show, if he could, that the witness had made statements out of court contradictory to his testimony, and thus impeach his credibility; and it was competent for counsel to comment upon the claimed impeachment, but the record shows no justification for a charge or an insinuation of bribery.

The other statement above quoted was unauthorized by any evidence that was, or by any known rule of evidence could have been, in the case; and yet the statement was made as a fact, was likely to have been received by jurors as such, and to have prejudiced the defendant's rights in their minds.

That these statements were valid ground of exception is well settled.

"Counsel in their arguments to the jury are bound to keep within the limits of fair and temperate discussion. The range of that discussion is circumscribed by the evidence in the case; any violation of this rule entitles the adverse party to an exception, which is as potent to upset a verdict as any other error committed during the trial." *State* v. *Hannett*, 54 Vt. 83.

"Exception was taken by defendant to a remark of the counsel for the plaintiff in the closing argument to the jury. He made a statement of a fact to the jury which concededly was not in proof. The impropriety and wrong of counsel thus stating or assuming facts in argument which are outside of all evidence are perfectly manifest. If a deliberate act, its object can be only to have the jury consider a fact not in the case, and thus induce a verdict not warranted by the evidence. Legitimate argument elucidates the truth. Its power and usefulness in this behalf are very great. The largest latitude should therefore be allowed to counsel in argument fairly within the scope of the evidence. But it has been repeatedly held in other jurisdictions and recently in this, that when counsel persistently travel out of the record, basing argument on facts not appearing, and appealing to prejudice irrelevant to the case and outside of the proof,

·it not only merits the severe censure of the . court, but is valid ground for exception." *Rea* v. *Harrington*, 58 Vt. 181.

In *Bullard* v. *R. Co.*, 64 N. H. 27, it was held that a verdict would be set aside for unwarranted remarks of counsel to the jury in closing, unless the presiding judge found, as a matter of fact, that the jury were not influenced thereby, or that the effect upon their minds was wholly removed by a retraction of counsel, the charge of the court, or in some other way. In commenting on this subject Smith, J., said :

"In spite of the fullest and frankest retraction, and the most explicit and emphatic instructions to lay the remark entirely out of consideration, the trial may not be fair. It may not be in the power of the retracting counsel and the court to remove the prejudice. Their combined and vigorous exertions may not control the mental operations of the jury. The jury may not be able wholly to free their memory or their judgment from the unfair and illegal impression made by a plausible statement of fact, which may seem to them entitled to more respect than the rule of law that excludes it."

In *Perkins* v. *Burley*, 64 N. H. 524, counsel stated in argument to the jury, "that if they knew how the plaintiff and his father and brother were regarded in the vicinity in which they lived, he would be willing to submit the case without argument." Blodgett, J., said that this "was, in effect, a declaration that the reputation of the plaintiff and his witnesses was bad in the vicinity of their homes, and was known to be such by the counsel himself. This declaration, not being evidence, was plainly without the bounds of legitimate advocacy, and from its character inevitably tended to prejudice the plaintiff's case, and to deprive him of that fair and impartial trial to which all parties are entitled as of right." See also *Robertson* v. *Town of Madison*, 29 Atl. R. 777, (N. H.).

In *Brown* v. *Swineford*, 44 Wis. 282, the court reversed a judgment and ordered a new trial on an exception of this kind, and said :

"The learned counsel went beyond the legitimate scope of all argument by stating and commenting on facts not in evidence.  \*  \*  \*  The appellant took his exception, and his counsel now supports it by numerous cases.  \*  \*  \* All of them support the rule now adopted by this court, that it is error sufficient to reverse a judgment for counsel, against objection, to state facts pertinent to the issue and not in evidence, or to assume *arguendo* such facts to be in the case when they are not.  Some of the cases go further, and reverse judgments for imputation of counsel of facts not pertinent to the issue, but calculated to prejudice the case. There are cases in conflict with those which support this rule.  But in the judgment of this court, the rule is supported by the weight of authority and by principle."

In *Coble* v. *Coble*, 79 N. C. 589, it was held not to be within the privilege of counsel, in argument to the jury, to use language calculated to humiliate and degrade the opposite party in the eyes of the jury and bystanders when he had not been impeached.

"If counsel go beyond the evidence and bring in foreign and unproved matters, courts should interfere, and if the trial court does not interfere, and the matter improperly brought before the jury is of a material character, the appellate court may reverse the judgment."  \*  \*  \*  "If the statement is an unimportant one, or one not likely to wrongfully influence the jury, the verdict will be upheld." *Proctor* v. *DeCamp*, 83 Ind. 559; *Battishill* v. *Humphreys*, 64 Mich. 514.

That case and the others noted on the briefs are to the effect that, while a verdict will not be set aside for mere irrelevant remarks of counsel in argument, counsel must be confined within legitimate bounds in the discussion of facts before the jury.  None of the cases to which we have been referred are at variance with the rule laid down by Veazy, J., in *Rea* v. *Harrington*.  The statements of counsel in the present case clearly fall under that rule, and entitle the defendant to a reversal.

The omission of the trial court to stop the counsel in his argument, and require him to retract his unwarranted state-

ments when objection was made, was tantamount to a ruling that the statements were warranted by the evidence. In this there was error.

*Judgment reversed, verdict set aside, and cause remanded.*

TAFT, J.    I doubt upon the first question discussed.

Upon the other question, if the omission to stop the counsel when misstating facts is regarded as a ruling, I concur; otherwise I dissent, as this court sits only in revision of errors made in the rulings, and the refusals to rule, made in the court below. I, for one, think the proper manner to deal with the misconduct of counsel in argument is for the trial court, in its discretion, to set aside the verdict if by such means one is obtained.